J. FREDERICK ADAMS, JR. *v.* SAFE DEPOSIT & TRUST COMPANY

GRACE H. CAMPBELL *v.* SAME

[Nos. 43, 44, April Term, 1940.]

*Decided May 23rd, 1940.*

The causes were argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Walter Mitchell Jenifer,* with whom were *Jenifer & Jenifer* on the brief, for J. Frederick Adams, Jr., appellant.

*Eben J. D. Cross,* for Grace H. Campbell, appellant.

*A. G. Bush* and *Joseph Townsend England,* with whom was *F. Howard Smith* on the brief, for the Safe Deposit & Trust Company, appellee.

SHEHAN, J., delivered the opinion of the Court.

These are appeals from a decree of the Circuit Court of Baltimore City. There were embraced in the one record four appeals, the first two of which, those of Sarah M. Curtis, were abandoned before the argument, leaving the appeals of J. Frederick Adams, Jr., and Grace H. Campbell for our consideration.

The question arises upon the proper construction of that part of the eighth paragraph of the will of George J. Appold, deceased, which is as follows: "In further trust that if any of my said daughters shall die without issue living at her or their death, respectively, or if she or they shall leave issue as aforesaid, and all such issue shall die under the age of twenty-one years and without leaving issue, in further trust to hold the portion out of which the income was payable to the person or persons so dying to the use of my surviving daughter or daughters and the descendants of any deceased child, per stirpes and not per capita, the portions of any issue under age to be retained as above stated until they are of age." It was stated by counsel in the argument at bar that the questions in both cases are identical, and that the true meaning of the word "child," as used in the will, is the only question involved, and in that respect the appellants urge that it was the intention of the testator that the word "child" should be limited and so construed as to mean "female child" or "daughter" and not to include any male child. It is on this narrow question alone that the appeals are presented and about which the parties in these cases are concerned.

The appellants urge that, in reading the will from its four corners, we should by construction, either introduce the word "female" before "child" or in place of the word "child" write the word "daughter." Should this course of construction be pursued, and the devolution of the property be thus limited to the children of a daughter or daughters, then Sarah M. Curtis, wife of R. Ashton Curtis, the daughter of George N. Appold, and granddaughter of the testator, would thereby be excluded from participating in that part of George J. Appold's estate which he gave by his will to his daughter Alice for life and which upon her death, without issue living, was to go over "to the use of my surviving daughter or daughters and the descendants of any deceased child."

The will of George J. Appold is dated October 31st, 1892, and he died in November 23rd, 1897. He left sur-

viving him three daughters, Alice T. Appold, Grace H. Campbell, and Nellie B. Adams, none of whom were married at the time of his death. He also left his granddaughter, Sarah M. Appold, now Curtis, and her mother, Florence C. Appold, and two sisters surviving him. By a codicil to his will, dated September 7th, 1897, the Safe Deposit and Trust Company of Baltimore was substituted in the place of other executors named therein, but he made no further change in it. Under the will the major part of the estate was divided into three equal parts among his daughters, Alice, Grace, and Nellie. Small legacies were given to others. The Safe Deposit and Trust Company was named as trustee for certain purposes as provided in the will. The trust company entered upon the administration and settlement of the estate, and assumed the duties imposed upon it as trustee. There were three trust funds established in the will, and property to the value of $600,000 was designated as constituting these three trust funds of $200,000 each, to be held as an undivided fund; the net income to be paid in equal shares to the daughters. The residue of the estate, after these and other provisions, was given absolutely to the three daughters in equal shares. Nellie B. Adams died in 1921 and her share continued to be held in trust, as directed by the will, for the use of her only child, J. Frederick Adams, Jr., until he should become twenty-one years of age.

The trustee, under authority of the court which had assumed jurisdiction of the trust for the benefit of Alice T. Appold and others, continued to administer her share of the estate until her death in 1939, unmarried, and consequently without issue. Suits were subsequently filed in which the several persons in interest became parties, two of which appeals were abandoned, as above stated. The appeals of J. Frederick Adams, Jr. v. Safe Deposit and Trust Company of Baltimore, Trustee, and Grace H. Campbell v. Safe Deposit and Trust Company of Baltimore, Trustee, remain for our consideration, as above indicated, and relate to the proper division and

distribution of the share of the deceased daughter Alice. Our problem is to determine whether this sum of money should be equally divided between Mr. Adams and Mrs. Campbell to the exclusion of Mrs. Curtis, or should be equally divided in three equal parts among Mr. Adams, Mrs. Campbell and Mrs. Curtis. The lower court decided that it should be divided in three equal parts and so distributed, and it is from this decree that the appeals here are taken. It is the division of the share of Alice, who died without issue, that is in dispute.

In order that the short provision of the will which is controlling in this case, may be borne constantly in mind, we again quote it: " * * * in further trust to hold the portion out of which the income was payable to the person or persons so dying to the use of my surviving daughter or daughters and the descendants of any deceased child * * * ". Reducing this quotation to the exact point in issue, this property is devised to " * * * my surviving daughter or daughters and the descendants of any deceased child * * * ". and, further reducing it, we find that the whole question turns on the meaning of the word "child." Upon the death of Alice we have approximately $200,000 for distribution, and in order to deny any part of this to Sarah M. Curtis we must say that "child" means "daughter," or "female child." This meaning cannot be given to the word unless there is something in the situation of the parties that requires us to so construe this word as to deprive it of its primary and usual meaning, for that meaning comprehends male and female, son and daughter.

It is one of the rules of construction that words shall be taken in their usual and ordinary meaning (*Darden v. Bright*, 173 Md. 563, 567, 198 A. 431), unless the facts and circumstances impel one to apply unusual and extraordinary significance to the language or words employed. Diligent research fails to discover any case in Maryland, or elsewhere, having a direct and controlling effect, and well illustrates the statement of Judge Offutt in his opinion in *Stahl v. Emery*, 147 Md. 123, 127 A.

760, that no will has a twin brother. And so here the language must be considered in the light of those general principles that guide or control in the construction of wills, and by the facts and circumstances surrounding the testator, and which existed at the time the will was executed.

The first and paramount rule is that the testator's intention, when he made the will, as shown by its language, is the goal to be sought. In the case of *Slingluff v. Johns*, 87 Md. 273, 39 A. 872, 873, the rule is well stated. This court there said: "The construction of every will must be determined upon its own peculiar circumstances as they appear in the will itself, and, therefore, it is that the mere fact that similar language has been elsewhere construed and interpreted in the light of facts there disclosed cannot be accepted as necessarily controlling in other cases. The maxim that, 'the intention of the testator, when apparent on the face of the will, must be gratified, if it be lawful to do so, must always be invoked when any particular clause of the will is obscurely or inaptly expressed, though, when so invoked, great care is required that the privilege of construing the will be not perverted into the privilege of reconstructing it. In *Larmour v. Rich*, 71 Md. 369, 18 A. 702, this court expressed with much force and clearness the manner and spirit in which this duty of construing a written instrument should be approached, saying: "Obviously, the most simple way to ascertain what a testator's or grantor's intention was is to read what he has written, because what he has written was designed by him to express that intention. * * *" and in this connection it should be borne in mind that "the court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. * * * The purpose of construction, as applied to wills, is unquestionably to arrive, if possible, at the intention of the testator; but the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed by the language of the will."

See *New Jersey Title Guaranty & Trust Co. v. Dailey,* 123 N. J. Eq. 205, 196 A. 703, 706.

If the meaning is clear and can be ascertained by the verbiage of the will the court has no right to change it by construction. In arriving at the meaning the court must ordinarily give the words their common, ordinary, and usual meaning. To do otherwise the court would be writing the will for the testator instead of saying what the testator meant by what he wrote. There is nothing very ambiguous in the words " * * * surviving daughter or daughters and the descendants of any deceased child, per stirpes * * * ". If the testator did not mean what he wrote, then at the time of the making of the will he could easily have substituted the word "daughter" for "child," or at the time of the making of his codicil he could have made this correction. There is nothing difficult, obscure, or misleading in an effort to do this, and where the meaning is clear then certainly this court cannot undertake to write it otherwise. There is nothing in the case that would tend to show that the testator means to deprive his grandchild, the daughter of an only son, of her fair share of his property that would doubtless have been given to his son were he living. We cannot see by what reasoning the share of the property should be given to the son of a deceased daughter and denied to the daughter of a deceased son, where there is nothing in the circumstances to justify it. It is a rule of construction that an equitable distribution of one's property among the natural objects of his bounty must be given consideration and weight, and that his legal heirs should be regarded as possessing the same consideration unless otherwise clearly provided. In other words, those who have equal claim in law or in affection upon the testator, should be placed in equal positions where it can be done without doing violence to the written word. We interject here the statement that "while a will takes effect from the date of the death of the testator, * * * it must be interpreted as of the date of its execution, and in the light of the circumstances then surrounding and known

to the testator." *West v. Sellmayer,* 150 Md. 478, 133 A. 333.

The fact that the will of George J. Appold was written for him by eminent counsel would strengthen the belief that the significance and meaning of the word "child" was apparent to the draftsman, who could have easily introduced the word "daughter" if this had been his intention. Such a situation cannot be ascribed to inadvertence, or a lack of understanding, or an uncertainty in the meaning of the rule. Therefore, under its terms, we do not see any uncertainty, provided we read the will as it is and conform our opinion to its expressed intention, adopting the usual, ordinary, and accepted meaning of the language employed. We can arrive at no conclusion other than that the decree in this case should be affirmed. The learned chancellor has written a most comprehensive and convincing opinion, with which we fully concur.

> *Decree affirmed, costs to be paid by the appellants, J. Frederick Adams, Jr., and Grace H. Campbell.*