Argued February 6, affirmed September 6, petition for rehearing
denied September 25, 1957

IN THE MATTER OF THE ESTATE OF SAMUEL H. PALMER,
DECEASED

ERICKSON *v.* PALMER ET AL

315 P. 2d 164

*Norman N. Griffith,* Portland, argued the cause for appellant. With him on the briefs were Humphreys & Jones, Portland.

*George W. Mead,* Portland, argued the cause for respondents Dorothy Marian Palmer and The First National Bank of Portland (Oregon). With him on the brief was James P. Forsyth, Jr., Portland.

Before Rossman, Presiding Justice, Lusk, Warner and Kester, Justices.

WARNER, J.

This is an appeal from an order of the probate department of the Circuit Court of Multnomah County construing the will of Samuel H. Palmer, deceased. The proceeding was initiated by the petition of Veronica M. Erickson, the decedent's daughter, praying for a construction of the testator's will which would determine the petitioner's rights thereunder, and particularly by adjudging her to be the testator's sole heir at law and owner in fee of the parcel of real property described in paragraph VII of her father's testa-

ment. Except as to her relationship to the decedent, the order was adverse to Mrs. Erickson's contentions, in that it found that the title to the property had vested in Dorothy Marian Palmer, the testator's widow, and the petitioner, therefore, brings this appeal.

Veronica M. Erickson, the petitioner, is the testator's only child by a previous marriage. The respondents are Mrs. Palmer, the widow, and stepmother of the petitioner; Susan Ellen White, the minor daughter of the petitioner and Clifford A. White, Mr. Palmer's surviving partner, and granddaughter of the testator; and The First National Bank of Portland (Oregon), hereinafter called the Bank, the qualified and acting executor of Mr. Palmer's estate, and nominated trustee under his will. The petitioner, her daughter, Susan, and her stepmother are all testamentary beneficiaries of Mr. Palmer. Each of the respondents filed separate answers to Mrs. Erickson's petition, but only Mrs. Palmer and the Bank have filed answering briefs.

The provisions of Mr. Palmer's will calling for a construction giving rise to the instant matter are paragraphs VI and VII, reading:

## "VI.

"It is my express wish and desire that the business of Western Fence & Wire Works, Portland, Oregon, at present a partnership business in which I and Clifford A. White are equal partners, shall be carried on and perpetuated to the benefit of my partner and my other objects of bounty, and to this end it is my express wish and desire that my faithful employees, Charles Saxton, Gladys A. Hopkins and Frank Essley, all of Portland, Oregon, be given and accorded by my Executor hereinafter named the option and first opportunity to purchase and acquire in equal shares my partnership interest therein at the cost and value placed thereon by the appraisers of my estate. It is my hope and

desire that my surviving partner or partners, as the case may be, will join in a partnership or other proper business relationship with my said three faithful employees to continue and perpetuate this heretofore successful enterprise.

"VII.

"In the event that proper arrangements shall be made and perfected to effectuate my wishes and desires as expressed in Paragraph VI of this my will within eight months immediately following my decease, then and in that event I give and devise unto The First National Bank of Portland, located at Portland, Oregon, in trust only for the uses and purposes specified in Paragraph VIII of this my will, the following described real property, to-wit:

"All of Lots Seven (7) and Eight (8), Block One Hundred Seventy-three (173) HAW-THORNE PARK, East Portland, now within the corporate limits of the City of Portland, County of Multnomah and State of Oregon.

But in the event that such proper arrangements shall not be so made and perfected to effectuate my wishes and desires as expressed in Paragraph VI of this my will within such eight months immediately following my decease, then and in that event I give and devise said real property unto my wife, Dorothy Marian Palmer, absolutely, and if she should not be then living, then to my heirs at law."

Paragraph VIII divides the residuary estate into two equal parts, one of which goes to his widow and the other to The First National Bank of Portland, as trustee, for the use and benefit of Mrs. Erickson, the petitioner, who is therein described as Veronica Marie Palmer White (her name before a subsequent marriage), the petitioner's daughter, the respondent Susan Ellen White, "and any other child or children" of the petitioner.

Samuel H. Palmer executed the challenged will on

February 10, 1948, and died on March 17, 1951. Prior to, and at the time of his death, he was in partnership with Clifford A. White in a prosperous business known as Western Fence & Wire Works, in Portland, Oregon, and wherein each had an equal interest. This industry had its situs on the two lots which are more particularly described in paragraph VII of the testator's will and hereinafter referred to as Lots 7 and 8. The principal question raised by this appeal is the proper devolution of title to these lots.

The possible new partnership, which was the subject of Mr. Palmer's solicitude, as indicated by paragraph VI of his will, was never formed.

■ Before going forward, it will not be amiss to here note two important constructions of the will upon which the parties hold in common accord. The basic one is: That paragraph VII of the will creates an executory devise of the contested parcel of realty. With this conclusion we also agree and find the legal meaning and significance of an executory devise is comprehended by our statement found in *Imbrie v. Hartrampf*, 100 Or 589, 598, 198 P 521:

> "An executory devise is defined as a future estate or interest in lands created by will and limited so that it cannot take effect as a remainder or a future use. It does not vest at the death of the testator, but only on the happening of some future contingent event. It is such a limitation of a future estate or interest in lands as the law admits in the case of a will, though contrary to the rules of limitations regarding conveyances at common law. It can be created without the intervention of a preceding estate, and it may be limited after a fee: 2 Alexander on Wills, § 1017. This kind of an estate or interest, it is declared, was instituted to support the will of the testator in cases where by the rules of law the devise of a future estate could not operate

as a remainder, as in case of a remainder after a fee which, although not good as a remainder, is valid as an executory devise: 4 Kent's Com. *269."

Also see 19 Am Jur 560, Estates § 101; Thompson on Wills (3d ed) 538, § 357; Lewis, 2 Blackstone Commentaries, * 173; 4 Kent's Commentaries (14th ed), *269; Tiedeman, Real Property (3d ed), 564, § 385; 2 Alexander, Law of Wills, 1472, § 1017.

The appellant-petitioner and appealing respondents also concede that paragraphs VI and VII of the will create alternative executory devises; either to the respondent Bank, as trustee, or to Mrs. Palmer, the widow, depending upon the outcome of the action with respect to the option given the three persons named in paragraph VI.

The first alternative devise is created by paragraph VII of the will and is applicable only "In the event that proper arrangements shall be made and perfected to effectuate my [testator's] wishes and desires as expressed in Paragraph VI of this my [testator's] will within eight months immediately following my [testator's] decease, then and in that event" he devises the contested parcel of land to The First National Bank, as trustee, for the uses and purposes set out in paragraph VIII of the will.

The second alternative devise is found in the same paragraph. It controls in the event such arrangements are not consummated within eight months after the testator's death, and upon such contingency, then the testator gives the real property to his widow.

The appellant presents for our consideration twelve assignments of error, many of these are repetitive in character, as well as in the argument in support of them. A consolidation and summarization of these as-

signments brings to the fore and more clearly the basis for Mrs. Erickson's claim to ownership. She argues that inasmuch as the estate, which existed in the interim between the testator's death and the vesting of the executory devise, was not disposed of by will, the fee thereto descended immediately to her by operation of law as intestate property, and claiming that the conditions of paragraph VI, relating to the option and formation of a new partnership were never met because they had been rendered impossible of performance, the executory devise could not and did not vest, and, therefore, the fee to Lots 7 and 8 remained in her, absolutely, and to the exclusion of any interest therein by the widow or the Bank, as trustee. The important element in her claim is the assertion that Mr. Palmer died intestate as to estate which precedes the vesting of the executory devise.

Mrs. Palmer urges to the contrary and represents that the fee simple title to these lots now reposes in her.

We find no merit in appellant's claim of ownership. Its weakness lies in her representation that the fee descended to her upon her father's death as his sole heir at law.

■ As indicated by *Imbrie v. Hartrampf*, supra, and other authorities cited, an executory devise is an estate in future. It does not vest at the death of the testator, but only on the happening of some future contingent event. While an executory devise can be created without the intervention of a preceding estate, it is more usual to discover that it comes into existence after a preceding estate, as it does under Mr. Palmer's will. It is within the power of the testator to give the estate which precedes the executory devise a term of any length provided the title vests in the executory

devisee within a life or lives in being at the death of the testator and 21 years thereafter. 4 Kent's Commentaries, supra, at *283; *Stephens v. Stephens,* 2 Barnardiston, KB 375, 94 Reprint 563. The estate which terminates on the investiture of the executory devise is variously referred to and described as a "determinable or qualified fee, with a gift over in the nature of an executor devise" (*Imbrie v. Hartrampf,* supra, 100 Or 598); an estate upon "conditional limitation" (2 Alexander, Law of Wills, at 1472); "a defeasible fee" (4 Thompson on Real Property, 705 § 2165). A better or most exact technical description is not necessary to our conclusion and we will, therefore, content ourself with reference to it as the "preceding estate." Here, however, the preceding estate is of relatively short term, being limited to eight months and, therefore, of only slight value to those to whom this intermediate estate descends. Even this value to the persons who take is for practical purposes reduced by the right to the possession and rents granted to the executor by ORS 116.105.

The fee which appellant attempts to identify herself with is that of a preceding estate of eight months duration.

■ This she does by authority of that frequently-occurring phrase in the literature of executory devises, which, when referring to the estate intervening between the testator's death and the vesting of the executory devise, reads: "the fee passes in the usual course of descent to the heirs at law." 19 Am Jur 561, supra. The statement is true when there is no testamentary disposition made of the title to the estate which follows the testator's death and terminates upon the happening of the contingency which operates to vest title under the executory devise. But it is otherwise

when the will provides who shall take title to this intervening defeasible fee simple.

The appellant concedes that such is the rule and cites the following from *In re Estate of Moore,* 190 Or 63, 75, 223 P2d 393 in confirmation:

"This court has held that title to all realty passes upon the death of the owner to his devisees in the event that he died testate, otherwise to his heirs, subject only to the right of the executor or administrator to possession thereof for the payment of debts and bequests of the decedent. *Blake v. Blake,* 147 Or. 43, 49, 31 P. 2d 768, and authorities therein cited; § 19-301, O.C.L.A., and § 19-1202, O.C.L.A. as amended by Chap. 389, Oregon Laws 1947." Also see ORS 111.020.

But, argues appellant: "Since the will here does not place the title of the land in anyone prior to the making of the 'proper arrangements,' there is in effect a partial or temporary intestacy. In that interval title to the land was in testator's heirs-at-law."

■ Appellant's error lies in the fact that the will does vest title and, therefore, it does not descend to her by operation of law as the testator's heir. She overlooks the residuary clause (paragraph VIII) wherein the decedent directs:

"All of the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, of which I may die seized and possessed and to which I may be entitled at the time of my decease, I give, devise and bequeath as follows: one-half thereof unto my wife, Dorothy Marian Palmer, absolutely; and one-half thereof unto The First National Bank of Portland, located at Portland, Oregon, not, however, for its own use and benefit, but IN TRUST ONLY for the uses and purposes following, that is to say: * * *."

■ Where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of an estate will not be adopted if by any reasonable construction it can be avoided. This presumption gains strength when the subject of the gift is the residuary estate. *Jorgensen v. Pioneer Trust Co.,* 198 Or 579, 595, 258 P2d 140; *In re Estate of McCoy,* 193 Or 1, 6, 236 P2d 311; 57 Am Jur 754, Wills § 1158; 95 CJS 828, 834, Wills § 615.

■ It would be difficult to draw a clause in more general terms or of greater all-inclusiveness than in the words used by the testator. "Its purpose and function is to make a complete testamentary disposition of the testator's estate so that no part of it may pass as intestate property." 96 CJS 216, Wills § 796.

The Palmer will opens the residuary clause with this phrase: "All the rest, residue and remainder * * *." These words are the same as appeared in the Hilleary will construed in *Brown v. Hilleary* (1934), 147 Or 185, 32 P2d 584. What we said there at page 191 likewise applies here: "It is a rule of general application that a general residuary devise such as that contained in this will carries every interest, whether known or unknown, immediate or remote, not otherwise disposed of by the will, unless some other provision in the will shows that the testator intended that it should not have that effect."

■ No reason appears for not applying the same principle to the residuary clause in Mr. Palmer's will. "* * * Thus, as a general rule, a residuary clause will be construed liberally and broadly in order to prevent a partial intestacy, unless there is an apparent intention to the contrary. Consequently, where the will contains a general residuary clause, in order to exclude a particular property belonging to the testator, and not

otherwise disposed of, a plain and unequivocal intention on the part of the testator to exclude that property from the operation of the clause must be manifested. * * *" 96 CJS 219-220, Wills § 797

█ We find the will reflects no indication that testator intended to exclude the title to the intermediate estate from the operation of the residuary clause. Thus, we hold that the interest in Lots 7 and 8 during the eight-month period following Mr. Palmer's death passed under the residuary clause to the residuary beneficiaries, i.e., one-half to the widow and one-half to the nominated Bank as his trustee.

Our conclusion respecting the ownership of the preceding estate renders it unnecessary to give further consideration to appellant's other assignments of error, except one, inasmuch as Mrs. Erickson's claim of ownership under her thesis must stand or fall upon her claim of title to the estate which preceded the investiture of the executory devise. The one to which we refer embodies the claim that Mrs. Palmer frustrated the formation of the new partnership. We will discuss that assignment later.

Indeed, the will, when examined in its entirety, shows a clear and resolute determination on the part of Mr. Palmer to deny to Mrs. Erickson any opportunity to come into the ownership, possession, management or control of any part of his estate except to take the income allocated to her from the trust he created under paragraph VIII of the will.

Under appellant's formula of ownership, whoever takes title to the preceding estate will ultimately take an absolute fee simple title to Lots 7 and 8 because of the various factors which petitioner claims renders performance of the testator's plan for a new partnership under paragraph VI an impossibility.

Even if we assume that the appellant took title to the preceding estate in the manner she contends, and even if we assumed further that all or any of the factors to which Mrs. Erickson points did operate to nullify the testator's plans under paragraph VI, yet we would still be compelled to hold that the estate created by the executory devise had vested in Mrs. Palmer. The ground for this conclusion is derived from the provisions for alternative devises to which we have earlier made reference.

■ We hold that a fee simple title to Lots 7 and 8 was to pass, absolutely, to Mrs. Palmer, the widow, in the event that the option given by paragraph VI to buy the testator's interest in the partnership business known as Western Fence & Wire Works, owned by decedent and Clifford A. White in equal shares, was not exercised for *any reason* and even though one of the reasons was impossibility of performance, unless it can be rightly said that Mrs. Palmer had for her own benefit deliberately defeated the formation of a new partnership as hoped for by her husband.

■ An option to purchase property of the estate at its appraised value can be conferred by a will. 96 CJS 833, Wills § 1104. But except to grant an option to the three favored employees named in paragraph VI "to purchase and acquire in equal shares my partnership interest therein at the cost and value placed thereon by the appraisers of my estate," the remaining language of that paragraph is purely precatory in character. It reflects not only the decedent's pride in a profitable industry, which was a monument to his business acumen, but also indicates his consciousness of the many uncertain facts, legal and financial, and the elements of character and temperament which might defeat the formation of the new partnership if

the three favored employees could not successfully interest Mr. White, the surviving partner, in entering into such an association with them. If the three employees had acquired Mr. Palmer's "partnership interest," it would, of course, at the most, be not more nor less than the decedent-partner's share "of the profits and surplus," ORS 68.430; *Claude v. Claude,* 191 Or 308, 330, 228 P2d 776, 230 P2d 211, and would have conferred upon the purchasers only the right to receive such amount as remained on dissolution after following the statutory direction provided by ORS 68.620 and created no obligation on the part of the surviving partner to enter into a partnership association with them. See *Fouchek v. Janicek,* 190 Or 251, 257, 225 P2d 783.

█ If proper arrangements for a partnership, as suggested by paragraph VI, had been effectuated, then title to Lots 7 and 8 would have gone to The First National Bank, as trustee, but if there were no "proper arrangements" consummated within eight months after the testators' demise, then the title passed to Mrs. Palmer, absolutely. The failure to make "proper arrangements" within that term is not dependent upon the commission or omission of a particular act by any particular person. The test of vestment of title in Mrs. Palmer is the fact that the survivors of the three favored employees did not elect to exercise their right under the option conferred upon them by paragraph VI if, indeed, the surviving employees could exercise the option. The reason for their nonaction is a matter of no importance so far as Mrs. Palmer's title is concerned, unless it can be demonstrated that Mrs. Palmer, the devisee, acted wrongfully to defeat the partnership arrangement suggested by her husband.

█ Earlier, we have given attention to appel-

lant's claim that the formation of the proposed partnership became impossible by reason of the acts of the devisee, Dorothy M. Palmer. This is incorporated in appellant's brief as her sixth assignment of error. Certainly, an interested person who unjustly prevents the performance of a condition should not be permitted to take advantage of his own wrong. The only item of evidence which petitioner offers in support of this contention is a letter, dated October 22, 1951, written by Mr. Mead, her counsel, and addressed to the trust department of The First National Bank, which recorded Mrs. Palmer's objections of legal character to a then proposed sale of Mr. Palmer's partnership interest to the surviving two of Mr. Palmer's favored employees. Our examination of the record convinces us that the letter had no effect whatsoever upon the then pending negotiations. According to the express testimony of the optionees and of counsel for them and other interested parties, the negotiations for a partnership agreement between the optionees and Mr. White continued after Mr. Mead's letter was received and almost up to the very moment the option expired and without any showing that they had been adversely influenced by what Mr. Mead had said in behalf of Mrs. Palmer.

We, therefore, find no merit in appellant's claim that Mrs. Palmer wrongfully interfered with the formation of the new partnership and that the failure to consummate such an association was in any way due, directly or indirectly, to her activity.

The circuit court is affirmed.