OTT, Chief Judge.
Thomas Dozier, as personal representative of the Estate of Floretta Snyder, and Mary R. Fletcher appeal from a probate court order revoking a will duly admitted to probate on the ground of forgery. We hold that the evidence was insufficient as a matter of law to support the court’s finding of a forgery.
Floretta Snyder died on September 23, 1981. She was survived by one daughter, two brothers, and five sisters. A will, dated July 28, 1981, was duly admitted to probate. The decedent’s entire estate was left to appellant Mary Fletcher, one of decedent’s five sisters. The will was drafted by appellant Fletcher’s husband, attorney Philip Fletcher. Thomas Dozier, a lawyer who handled the estate of the testator’s deceased husband, was named as executor.
Appellee, the decedent’s daughter, petitioned for revocation of the will. Appellee filed a five-count petition for revocation of probate of will: Count I, forgery and not the true signature of decedent; Count II, lack of testamentary capacity or mental competence of decedent; Count III, will not executed in accordance with section 735.-502, Florida Statutes (1981); Count IV, will procured by undue influence; Count V, execution procured by fraud. After discovery and prior to pretrial conference, the appellee voluntarily withdrew all counts except Counts I and III — forgery and failure to comply with the formalities of execution required by law. At trial, no testimony was offered to show that the requirements of section 732.502, Florida Statutes (1981), were not met. After a trial without jury, the probate court revoked the will as a forgery and ordered the matter to proceed intestate.
According to attorney Fletcher, his sister-in-law entered his law office on July 28, 1981, demanding that he draw a will for her prior to an upcoming flight to Las Vegas with her sister, appellant Fletcher. When informed that the sole beneficiary was his wife, attorney Fletcher informed the decedent that he could not draft the document but finally consented. He instructed her to see attorney Thomas Dozier about redrafting the will upon her return from Las Vegas. While the decedent waited, attorney Fletcher used a typewriter to fill in the blank spaces of a commercial will form himself. He read the will to the decedent and placed it in front of her. She indicated that the will was satisfactory. Art Barth, Jay Baerveldt, and Thomas Paine entered the room. The decedent signed the will with a felt tip pen. Ms. Baerveldt, Mr. Paine, and attorney'Fletcher then signed the will as witnesses. The signatures of the testator and the witnesses to the will were notarized by Barth, but not in such a manner as to make the document self-proving.[1]
Both Ms. Baerveldt and Mr. Paine arrived at attorney Fletcher’s office on July 28, 1981, to attend to their own business. Both were employees of appellant Fletcher in another business operation at the time the will was executed. Mr. Paine had been discharged by appellant Fletcher prior to *1109 the time of trial. Both were familiar with the decedent and testified that the decedent personally published and executed the will in their presence.
Mr. Barth was called as a witness by appellee. Apart from the will execution ceremony, he had never met the decedent. He assumed her identification as correct based on the attorney’s introduction and the fact that everyone else seemed to know her. At trial, he identified the decedent from a photograph taken during her Las Vegas vacation in August, 1981. Strangely, Mr. Barth was called as a witness at trial by appellee and there was no effort to establish him as a hostile witness.
Appellee presented the testimony of two handwriting experts, George Mesnig and Richard Casey, who testified unequivocably that the signature of the decedent on the will was a forgery. Mr. Mesnig indicated that use of a felt tip pen tends to hide the possibility of a forgery.
Ordway Hilton, a handwriting expert of notable acclaim, concluded that the signature of the decedent found on the will was “most probably” written by the same person that wrote the decedent’s established exemplars. The second of appellants’ handwriting experts, Ronald Dick, was not able to reach a definite conclusion, but indicated that the evidence leaned quite heavily toward the signature being genuine.
Irene Laurie, a close friend of the decedent, stated that the decedent came to her home during the week prior to her death and indicated that the Fletchers were “trying to get [her] to make out a will.”
There was other limited but conflicting evidence on the consistency of the will with the decedent’s previously expressed dispo-sitional intentions. In that regard, it was uncontradicted that appellant Fletcher was the only one of decedent’s siblings who had maintained any relationship with decedent for years. Appellee and decedent had not maintained a close relationship, since appel-lee had been taken away from decedent when a small child. However, such testimony was incidental and sketchy at best, as the trial court ruled it was irrelevant to the issue of forgery.
The probate court granted appellee’s petition for revocation of probate of the will. In doing so, the probate court relied on the two expert witnesses presented by appel-lee, the unusual circumstances of the will execution — the fact that the will was prepared by the husband of the sole beneficiary named in the will, the decedent signed the will with a felt tip pen, the unnecessary repetition of the bequest to appellant Fletcher in the second paragraph, and the unnecessary use of a notary public — and the failure of the testator to mention her siblings or lineal descendant in the will.
The decision of the probate .court is affirmed if there is substantial competent evidence to support the finding of the probate judge and the judge did not misinterpret the legal effect of the evidence as a whole. In re Estate of Krugle, 134 So.2d 860 (Fla. 2d DCA 1961).
In Krugle, a will admitted to probate was challenged on the ground that it was a forgery. The probate court found that the will admitted to probate was a forged instrument. On appeal, this court stated that a handwriting expert’s testimony that a document was a forgery, standing alone, and without corroboration by circumstances indicative of forgery or fabrication, was legally insufficient to overcome the testimony of unimpeached eyewitnesses. 134 So.2d at 862. Finding the lack of such corroborating circumstances, this court reversed the factual finding of the probate court.
We believe the instant case falls within the rule of Krugle. Although the circumstances of the will execution cited by the probate court may be considered superfluous or even peculiar, we find that they and the other evidence do not suggest a forgery or fabrication of the decedent’s signature. The circumstances may, somewhat remotely, suggest undue influence, a will inconsistent with a previous expression, or overreaching or other breach of ethical or legal standards. However, ap- *1110 pellee expressly withdrew such issues and agreed that the only issues to be tried were whether or not the signature was genuine and whether the will was executed with the requisite testamentary formalities. We find that the testimony of the two handwriting experts is the only evidence of forgery. The expert testimony, standing alone, is insufficient to overcome the unim-peached testimony of the several eyewitnesses as a matter of law. None of the other evidence presented by appellee even remotely dealt with whether or not decedent signed the will or was the person presented to the witnesses and the notary as the testator. Moreover, there was no significant impeachment of the testimony or truth and veracity of the eyewitnesses or the notary.
Accordingly, the judgment of the probate court is REVERSED with instructions to deny appellee’s petition to revoke probate of the will and to reinstate the probate of the will.
GRIMES and CAMPBELL, JJ., concur.

. See section 732.503, Florida Statutes (1981), for the requirements to make a will or codicil self-proving.