531 A.2d 1285

**K. Lola MUFFOLETTO**

v.

**Diane M. MELICK, Special Administrator of the Estate of C. Verne Muffoletto.**

**No. 67, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 9, 1987.

David L. Dowell (Susan E. Harris, on the brief), Towson, for appellant.

No brief or appearance by appellee's counsel.

Argued before MOYLAN, WILNER and ROBERT M. BELL, JJ.

WILNER, Judge.

At issue here is the authority of a circuit court to extend a specific option period provided for in a Will. We shall conclude that, in the circumstances presented in this case, the Circuit Court for Baltimore County had such authority and did not err in exercising it.

When C. Verne Muffoletto died on April 29, 1986, he owned 81% of the stock of Muffoletto Optical Co., Inc., having previously given 19% to certain key employees. He dealt with his remaining shares in Item 5 of his Will as follows:

> "I offer the first right of refusal to purchase the remaining stock of THE MUFFOLETTO OPTICAL COMPANY, INC. to any number or all of the employees of said company. The purchase price shall be the fair market value of the company at the date of my death. If less than all of the shares of said company are purchased under this option and the remaining unpurchased shares constitute a minority interest this option shall lapse and be null and void. *The said employees of the company shall have six (6) months from the date of my death to exercise this option to purchase.*"

(Emphasis added.)

In the typed version of the Will, Mr. Muffoletto named John F. McClellan, Sr. and Mercantile-Safe Deposit and

Trust Company as personal representatives and as trustees of a marital trust and a residuary trust created in the Will. At some point—we know not when—he added, by handwritten interlineation, the name of his daughter Diane M. Melick as a personal representative and trustee. Following Mr. Muffoletto's death, Mr. McClellan and the bank renounced their positions as personal representative and trustee, leaving Ms. Melick as the sole appointee.

In July, 1986, Mr. Muffoletto's surviving spouse, appellant K. Lola Muffoletto, filed a caveat to the Will in which she complained about the interlineated addition of Ms. Melick. On July 22, the Orphans' Court admitted the Will to administrative probate and appointed Ms. Melick as special administrator pending resolution of the dispute. *See* Md. Code Ann.Est. & Trusts art., §§ 6–401—6–404.

This proceeding commenced with a petition for declaratory relief filed by Ms. Melick, as special administrator, on September 22, 1986. Quoting the provisions of Item 5, Ms. Melick asked the court to determine (1) whether the Will granted an option or merely a first right of refusal, (2) whether the right granted, whatever it was, was a pro rata one to each employee, and (3) whether the proceeds of certain life insurance policies on Mr. Muffoletto, of which the company was the beneficiary, were to be included in the "fair market value" of the company. Additionally, and more relevant to this appeal, Ms. Melick asserted that Ms. Muffoletto, as secretary/treasurer of the company and chairman of its board of directors, had denied her and the employees access to corporate records, thereby precluding an appraisal of the company and, as a consequence, a decision by the employees as to whether to exercise their rights under Item 5. Further, in that regard, she alleged that,

"Taking into account the dilatory tactics which have been practiced by K. Lola Muffoletto thus far, it is apparent that the litigation within the Orphan[s'] Court concerning the Estate will not be settled in time for Petitioner to gain access to the records and documents of the Company, hire

an appraiser to appraise the Company and have the appraisal completed before October 29, 1986, the date on which the employees' right to purchase the stock expires."

On this averment, in addition to the constructions of the language sought, Ms. Melick asked the court to "extend" the six-month period allowed to the employees by commencing it from the date of administrative probate (July 22) rather than the date of Mr. Muffoletto's death (April 29).

Ms. Muffoletto, in response, denied any wrongdoing, disputed the authority of the court to extend the option period, and asked that it not do so. The employees also answered the petition, contending that Ms. Muffoletto had indeed engaged in dilatory tactics to their prejudice. They joined Ms. Melick in seeking an extension of the option period.

The period stated in the Will was due to expire on October 29, 1986. On October 21, however, the court, by interlocutory order, found Item 5 to be ambiguous as to whether it granted an option or first right of refusal and stayed "the time frame set forth in" that Item pending a final decision on the petition for declaratory relief.

The case was heard on the merits on December 11, 1986. Counsel agreed that, in lieu of independent evidence, the court could "accept as accurate the representations included in the petition for declaratory relief, that they are all conceded...." Counsel for Ms. Muffoletto, in particular, agreed that "as far as I know, the fact claims in the complaint are okay." [1]

In an opinion and order filed the next day, the court construed Item 5 as granting an option rather than a first

---

1. When, in subsequent argument, counsel claimed that there was no evidence that "anybody has denied anybody any kind of access to the books and records," the court reminded him of the stipulation: "Well, it was included in agreement.... It was definitely assumed in argument that the president of the company was here, and was denied access to the books and records of the corporation by Mrs. Muffoletto. That was said, there was no objection that that is outside the facts." Counsel did not dispute that assumption by the court.

right of refusal, held that the option extended to all employees of the company, giving each the right to purchase a pro rata share of the 81%, and concluded that the insurance proceeds were to be included in the calculation of the fair market value of the company. The court found that Ms. Muffoletto would retain control of the company if the employees failed to exercise their option and, upon the stipulation noted above, also found that both Ms. Melick and the employees "were prevented from carrying out the intent of the Testator by reason of [Ms. Muffoletto's] interference and retention of the necessary documents and records required to ... determine the fair market value of his stock." It further concluded:

> "The only party objecting to the extension of the six month period is the very party who interfer[ed] with and prevented the clear intention of the Testator from being realized. To cap such party's interference with success would be a miscarriage of justice and would be granting relief to one with unclean hands as factually determined by this Court."

On that basis, as part of its declaratory judgment in the case, the court extended the six-month option period by commencing it on July 22, 1986—the date of administrative probate. On the last day of that extended period, the employees exercised their option.

■ Ms. Muffoletto appealed the December 12 order. She urges that, as the Will specifically commences the option period from the date of the testator's death, a court may not extend the period by commencing it from the date of administrative probate.[2]

---

**2.** There is some question whether this appeal is moot. We were apprised by appellant's counsel that 10 of the 11 employees have indicated that they no longer want the stock and would be happy to have the trial court's order reversed. There is nothing in the record before us to support that assertion, however; and as neither Ms. Melick nor the employees have participated in this appeal, we have not been favored with their response to that assertion. Absent any

We begin by acknowledging the general validity of appellant's arguments that (1) a court's paramount duty in construing and enforcing a Will is to ascertain and effectuate the testator's intention,[3] and (2) where the language of the Will is clear and unambiguous, it controls, and the court may not look further in ascertaining that intention.[4] The first proposition—the duty to ascertain and effectuate the testator's intention—is virtually ironclad. The second is less so. In *Robinson v. Mercantile Trust Co.*, 180 Md. 336, 339, 24 A.2d 299 (1942), for example, the Court observed:

> "In the construction of a will, the whole effort is to ascertain the intention of the testator.... In ascertaining such intention, not only the actual words used in the will, but also the situation of the testator and his relations with the parties to whom he has devised or bequeathed his property are important elements."

*See also Sabit v. Safe Deposit & Trust Co.*, 184 Md. 24, 37, 40 A.2d 231 (1944).

The ability—indeed the duty—of a court to look beyond the precise language of the Will in determining the testator's intent has been recognized, in particular, in cases where that language has imposed a condition on a bequest that, for reasons apparently unforeseen by the testator, has become impossible of literal performance.

Maryland has long accepted the doctrine that a "grantee is generally relieved from the performance of [a] condition if it is impossible or if it is prevented by an act of God, or if,

---

clear statement on the matter from the employees, we shall proceed as though the controversy still exists.

**3.** *See Leroy v. Kirk*, 262 Md. 276, 279, 277 A.2d 611 (1971); *Davis v. Mer.-Safe Dep. Co.*, 235 Md. 266, 269, 201 A.2d 373 (1964); *McElroy v. Mer.-Safe Dep. Co.*, 229 Md. 276, 283, 182 A.2d 775 (1962); *Newlin v. Mercantile Trust Co.*, 161 Md. 622, 632, 158 A. 51 (1932).

**4.** *See Newlin v. Mercantile Trust Co., supra*, 161 Md. 622, 632–33, 158 A. 51; *Boulden v. Dean*, 167 Md. 101, 105, 173 A. 26 (1934); *Adams v. Safe Dep. & Tr. Co.*, 178 Md. 360, 366, 13 A.2d 546 (1940); *Lederer v. Safe Dep. & Tr. Co.*, 182 Md. 422, 430, 35 A.2d 166 (1943); *Fersinger v. Martin*, 183 Md. 135, 138, 36 A.2d 716 (1944).

on a contingency which arises, a reasonable construction of the will does not call for strict performance." *Keyser v. Calvary Breth. Church*, 192 Md. 520, 523–24, 64 A.2d 748 (1949). *See also Kiser v. Lucas*, 170 Md. 486, 504, 185 A. 441 (1936). In *Keyser*, the testatrix, in 1942, left $1,000 to a church "for the building of a Church to be held in trust for a period of five years, if they do not build within five years then this returns to my estate." The legatee established that it was unable to meet the five-year condition because of building restrictions imposed by the government during World War II. Finding an impossibility of compliance with the expressed time limitation, the Court excused the non-compliance. As one basis for that decision, it quoted from Tiffany, *Real Property*, 3rd Ed., Vol. 1, § 195, p. 318:

> "Ordinarily, however, a condition which is referred to as impossible and as therefore void, is one which is not in itself impossible, but is merely impossible or impracticable because of the particular circumstances of the case. It would seem, however, that it is ordinarily more satisfactory to regard the grantee or devisee in such case as relieved from the necessity of performance of the condition, not because performance is impossible, but rather because, on a reasonable construction of the condition, it was not intended to call for performance in the contingency which has arisen."

This Court addressed the issue more recently in *Martin v. Young*, 55 Md.App. 401, 462 A.2d 77, *cert. denied* 297 Md. 418 (1983).

In a 1971 codicil, the testatrix there devised her home to her longtime nurse-employee Gladys Martin "if she survives me and is in my [employ] at the time of my death; and if she predeceases me or is not in my employ at the time of my death, this devise shall lapse." *Id.* at 402–03, 462 A.2d 77. From 1979 until her death in 1981, the testatrix was mentally incompetent and largely confined to bed. Five days before her death, her bank, acting pursuant to a power of attorney, moved the testatrix to a nursing home and discharged Ms. Martin from her employ. As a result, Ms.

Martin was not in the testatrix's employ at the time of her death, and, in a declaratory judgment action filed by her to construe the Will, the issue was raised of whether the devise necessarily lapsed. As in this case, the argument was made that the language of the Will imposing the condition on the gift was clear and had to be given effect. We responded, 55 Md.App. at 406–07, 462 A.2d 77:

"For centuries courts have recognized that impossibility of performance may modify the legal effect of the breach of a condition in a will. See *Simes,* The Effect of Impossibility Upon Conditions in Wills, 34 Mich. Law Review 909. In order to determine whether a legatee is entitled to take in this situation, it often will be necessary for a court to take into consideration matters extrinsic of the will itself. See 4 *Restatement of the Law of Property,* 2551 Sec. 438. The purpose of such evidence is not to prove that the testator intended something other than what he said. *On the contrary, the justification for considering such evidence is that a state of facts has arisen which the testator did not anticipate and for which he consequently failed to provide.*

The appellees herein insist that we follow the rule at common law that, before a devise of real property made upon a condition precedent could take effect, the condition had to be performed even though performance was rendered impossible through no fault of the devisee. We decline to do so."

(Emphasis added.)

We observed that the "usual American doctrine" in this regard was as articulated in 4 Restatement of Property, § 438—that impossibility of performance of a condition excuses nonperformance of the condition if that result "is the judicially ascertained intent of the person imposing the [condition]." In ascertaining that intent, we said, evidentiary factors may be considered in addition to general rules of construction. The question to be asked "is whether the testator's primary concern was the betterment of the individual or the performance of the condition."

The cases involving impossibility of performance present a range of fact patterns. *See*, in general, Annot., *Effect Of Impossibility Of Performance Of Condition Precedent To Testamentary Gift*, 40 A.L.R.4th 193 (1985). The most common situation is a condition that the beneficiary live with, take care of, or be in the employ of a third person for a given period of time, which is frustrated by the death of the third person prior to the appointed time, or, in some instances, prior to the death of the testator. In those cases, where the performance is made impossible by natural causes, the courts have had no difficulty in excusing the nonperformance, often with little discussion as to the testator's broader intent. *See, for example, Raby v. Minshew*, 238 Ga. 41, 231 S.E.2d 53 (1976); *True v. Cook*, 95 N.H. 198, 60 A.2d 138 (1948); *In re Johnston's Estate*, 277 A.D.2d 239, 99 N.Y.S.2d 219 (1950); *In re Lipiec's Will*, 37 Misc.2d 747, 236 N.Y.S.2d 199 (Surr.Ct.1962); *In re Warriner's Will*, 205 Misc. 272, 128 N.Y.S.2d 286 (Surr.Ct.1954); *In re Wachstetter's Estate*, 420 Pa. 219, 216 A.2d 66 (1966); *Morrison v. Prindle*, 30 Colo.App. 203, 491 P.2d 108 (1971); *cf. In re Estate of Beaver*, 206 N.W.2d 692 (Iowa 1973).

Where, as in *Martin v. Young*, and as alleged here, the impossibility arises not from some natural event beyond the control of anyone but from a volitional act or course of conduct on the part of someone other than the beneficiary, the courts have made a somewhat greater effort to discern what the testator would have done had he foreseen the problem. *See, for example, In re Bridge's Estate*, 41 Wash.2d 916, 253 P.2d 394 (1953), where the condition that the legatees be employed by the testator or his clinic at the time of his death was frustrated when, due to ill health, the testator retired and closed his clinic two years before his death. After an exhaustive analysis of the law and the circumstances surrounding the closing of the clinic, the Court concluded that "the apparent motive of the testator was to benefit these employees rather than to compel their employment until the date of his death" and thus held that

"literal compliance with the condition should be dispensed with...." 253 P.2d at 404.

*See also Boggess v. Crail,* 224 Ky. 97, 5 S.W.2d 906 (1928), where a bequest was made to an 11–year old orphan who had been living with the testator on condition that the child remain with the testator's wife until he reached 21. That condition was frustrated when, a year or so after the testator's death, the wife decided not to keep the child and placed him with his uncle. The Court sustained the gift despite the child's failure to satisfy the condition. *Compare In re Hill's Estate,* 215 Wis. 72, 253 N.W. 787 (1934), where, on similar facts, a different result was reached.

In some of these cases, the courts have used language suggesting that nonperformance arising from the volitional act of a third party will be excused only where the third party stands to gain as a result of the nonperformance, the rationale being one akin to estoppel. *See, for example, Harris v. Wright,* 118 N.C. 422, 24 S.E. 751 (1896); *Burnham v. Bennison,* 126 Neb. 312, 253 N.W. 88 (1934); *In re Mollard's Estate,* 98 So.2d 814 (Fla.Dist.Ct.App.1957); *In re Palmer's Estate,* 211 Or. 342, 315 P.2d 164 (1957). In other cases, in which the self-serving motive of the third party has been rather clearly evident, the courts have excused the nonperformance without any special reference to the improper motive. *See Peek v. Woman's Home Missionary Soc.,* 304 Ill. 427, 136 N.E. 772 (1922); *Morris v. Mull,* 110 Ohio St. 623, 144 N.E. 436 (1924); *Chamberlin v. Flowers,* 358 So.2d 463 (Ala.Civ.App.1978). At least one court has expressly rejected such a restriction. In *Wooster School Corp. v. Hammerer,* 410 So.2d 524, 527 (Fla.Dist.Ct.App. 1982), the Court, reviewing *In re Mollard's Estate, supra,* 98 So.2d 814, concluded:

"Certainly, a third party who prevents performance of a condition precedent should not be allowed to rely on nonperformance where that party (as in *Mollard*) stands to gain by preventing the performance; but we do not believe that excusing nonperformance should be restricted to cases in which the third party preventing perform-

ance is one who stands to gain by his act. There is respectable authority for a less restrictive exception which would excuse nonperformance caused by a third party whether the third party stands to gain thereby or not. *See* Annot.: Will—Condition—Impossibility, 39 A.L. R.2d 522, § 7[a]."

■ We need not determine that precise issue in this case. If indeed Ms. Muffoletto's dilatory tactics and suppression of company records sufficed to make compliance with the six-month option period impossible, it is clear that she had a self-serving motive for engaging in such conduct. Under either theory, noncompliance could be excused.

We turn then to whether the court erred in finding that her conduct was of that significance.

The option price for the stock was stated to be the "fair market value of the company." Putting aside the question of whether the testator really intended that the price for the 81% of the stock subject to the option was to be the *full* fair market value of the company or only 81% of that value, the fact is that, both from the language itself and the fact that the stock was not publicly traded, the price was to reflect the value of the *company* rather than any intrinsic or independent value of the stock itself. To establish that price, the assets and liabilities of the company would have to be appraised, and to perform that appraisal access to the corporate books and records would be necessary.

' ■ We cannot presume, and there is nothing in the record to suggest, that the testator intended to require his key employees to buy a "pig in a poke." He accorded them six months in which to have the company appraised and decide whether to exercise their option, no doubt believing that, in ordinary circumstances, that would be a reasonable time. There is nothing to suggest that he foresaw, or reasonably should have foreseen, that his widow would deliberately interfere with the normal course of events by denying access to the corporate records to both the employees (some of whom were apparently officers of the compa-

ny) and to his personal representative. On this record, we concur entirely with the Circuit Court that her actions did indeed make compliance with the six-month period stated in the Will impossible and that, had the testator foreseen that possibility, he would have desired that strict compliance be excused. We further find the relief granted by the court to be reasonable under the circumstances. It was not different in kind than the approach taken in *Keyser v. Calvary Breth. Church, supra,* 192 Md. 520, 64 A.2d 748, or *Chamberlin v. Flowers, supra,* 358 So.2d 463.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.