KAHN, L.D., Associate Judge.
In this consolidated appeal, Arthur M. Newman, III (“Arthur”) appeals from two orders entered by the circuit court concerning the estate of his father, A.M. Newman, also known as Arthur M. Newman, Jr (“decedent”). The trial court found that Arthur had intentionally and without good cause challenged his father’s will and delayed distribution of his father’s estate to his step-mother; therefore, Arthur was not entitled to inherit under the will. We affirm.
A.M. Newman died on June 29, 1997. In his will dated August 1962, the decedent bequeathed all of his estate to his wife, Ethel Newman (“Ethel”), and named her executrix. Ethel was ninety one years old at the time of decedent’s death. Ethel was Arthur’s step-mother. She had two children, who are not the children of the decedent. The will also provided:
Should my said wife predecease me, or should be deceased before the distribution of my estate, or we die in a common disaster, or my wife die within three months from injuries sustained in a common disaster, then I give, devise and bequeath all the rest, residue, and remainder of my estate as follows: ONE-HALF Qk) to my wife’s children: EDWIN L. SANDERS, JR. and FLORA ESTELLE BROGDEN, To be divided between them equally. ONE-HALF Qh) to my Son, ARTHUR M. NEWMAN, III.
On July 7, 1997, Ethel filed a Petition for Administration along with decedent’s will. The will was admitted to probate, and letters of administration were issued to Ethel. On October 3, 1997, Arthur filed a petition challenging the validity of the 1962 will, alleging that decedent’s signature on that will was a forgery. In Arthur’s first amended petition he attached the opinion of a handwriting analyst that the decedent’s signature on the 1962 will was not genuine.[1] Ethel moved to dismiss the first amended petition. She filed the oath of one of the witnesses to the 1962 will. The oath stated that the probated will was the one that he had witnessed.
On October 10, 1998, Ethel died.[2] On October 27, 1998, the successor personal representative moved for summary judgment on the basis that Arthur had no proof that the will was a forgery, other than the handwriting expert’s opinion. The affidavit of Berrien Becks, the attorney who prepared the decedent’s 1962 will, was also filed. Becks attested that the will that had been admitted into probate was the will that Becks had prepared in accordance with decedent’s wishes.
Arthur filed several affidavits in opposition to the Estate’s Motion for Summary Judgment. In addition to affidavits of handwriting experts, Arthur filed the affidavits of his son, Arthur Newman IV, his grandson, Arthur Newman V, decedent’s brother, Donald, and a close associate of the parties, Martin Wilcox. The affidavits generally state that the signature on the 1962 will is not, in the affiants’ opinions, that of the decedent, and that the decedent had promised his family that he would leave them “well provided for” and “taken care,” and that the will did not represent decedent’s true wishes.
On December 7, 1998, Arthur filed a Motion to Determine Beneficiaries. Arthur alleged in that motion that since Ethel had died before his father’s estate had been distributed, that he and Ethel’s two children should be determined as the beneficiaries under the will. This was the same will that Arthur was contesting. A hearing was held on March 4, 1999, and the Court granted Ethel’s Motion for Summary Judgment as to the validity of the 1962 will. The Order stated in pertinent part:
*1093 This cause was heard on respondent’s motion for summary judgment.... The court reviewed the uncontroverted affidavits of the three (3) witnesses to the decedent’s will. The court reviewed Attorney Berrien Becks affidavit concerning the preparation of the decedent’s will. The court reviewed the affidavits filed by petitioner.... The court reviewed the Dozier v. Smith decision found at 446 So.2d 1107 (Fla.App. 2 Dist. 1984), filed by respondent ... and based on the foregoing facts the court found Dozier, supra, controlling in this matter ... the court found as a matter of law the respondent’s motion for summary judgment is GRANTED.
In a separate Order, the court found that despite Ethel’s death, Ethel’s estate was the sole beneficiary under the Decedent’s 1962 will. The trial court found that Arthur had intentionally and without good cause delayed the distribution of the estate until his step-mother had died. The Order rendered by the lower court stated:
The personal representative argues that though she has no direct evidence, that it was the intent of the Petitioner, Arthur M. Newman, III, to drag matters out long enough until his step-mother died, but that common sense shows no other conclusion can be reached other than his attempt to delay matters....
The successor personal representative argues that had the petitioner been successful in getting the 1962 will thrown out, then the 1954 will would then be valid and under that will, he received only one dollar.[3]
The Court finds that the position taken by the successor personal representative is well founded by the circumstantial evidence and the case law cited by the successor personal representative.
This Court finds that the only logical conclusion is that the Petitioner, Arthur M. Newman, III filed his will contest of the 1962 will and delayed matters for almost two years in the hopes that his step-mother, Ethel Newman, who was 91 years of age when her husband, the decedent, died would not survive the will contest and the petitioner then could claim one-half of the estate under the terms of the 1962 will if Ethel Newman died prior to the distribution of said estate. Accordingly, ... the bequest to Ethel Newman did not lapse because of her death and that the estate of Ethel Newman is the sole beneficiary under the August 1962 will of her husband, the decedent A.M. Newman, a/k/a Arthur M; Newman, Jr.
Arthur appealed both orders.[4]
Throughout the case the Estate has argued in the trial court and in its briefs before this court that Arthur lacks standing to challenge the validity of the 1962 will. This Court agrees. Arthur acknowledged the genuineness of his father’s signature on the 1954 will, and he has not challenged that will. Section 733.109(1), Florida Statutes (1997) provides that “any interested person” may bring an action for revocation of probate. An “interested person” is defined as: “any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved. In any proceeding affecting the estate or the rights of a beneficiary in the estate, the personal representative of the estate shall be deemed an interested person.” § 731.201(21), Fla. Stat. (1997).
Arthur was actually disinherited in his father’s 1954 will since he was bequeathed only one dollar in that will. See e.g. Barrera v. Vanpelt, 965 S.W.2d 780, 781 (Ark.1998) (noting that decedent disinherited his son by giving him one dollar in the will); In re Estate of Evans, 79 Cal. Rptr. 1, 7 (Cal.App.1969) (describing cutting off decedent’s sister with a bequest of *1094 one dollar); In re Estate of Spivey, 1994 WL 697884 at *1, *2, n. 2 (Tenn.Ct.App. Dec. 14, 1994) (noting that “a person to whom nothing is left by an earlier unpro-bated will, which on its face appears to be executed in due form, has no standing to contest the probate of a later will,” and finding that appellant lacked standing to join the contest of the 1986 will where the 1984 will left one dollar to appellant’s mother-“such a de minimis interest is not sufficient to give the appellant standing. Something of a substantial nature is required.”).[5] The Second District Court of Appeal in Cates v. Fricker, 529 So.2d 1253, 1254 (Fla. 2d DCA 1988) stated:
We affirm the summary judgment which denied appellant’s petition for revocation of her father’s will which excluded appellant as a beneficiary. The basis for the summary judgment was that appellant “was specifically excluded as a beneficiary in two (2) previous Wills, the validity of which has not been questioned.... ”
The appellate court further stated that, “[W]hen an at least facially valid previous will is before the court, the burden is on the potential heir at law who wishes to contest a will to show that the previous will which excluded the contestant was invalid .... ” Id. at 1254-1255.
Arthur failed to meet his burden to show that his father’s 1954 will, which in essence disinherited him, was invalid; and therefore, he has no standing to contest the 1962 will.
Arthur contends that since Ethel died before the distribution of the estate, that he is entitled to half of his father’s estate under the provisions of the will. The trial court’s determination that Ethel’s devise did not lapse upon her death is affirmed. It is evident from the circumstantial evidence that Arthur’s challenge to the 1962 will was not undertaken in good faith. Arthur offers as the only explanation for challenging the will that it is in the interest of justice and for punishment of the forgers. Such an interest has been held insufficient to even confer standing to challenge a will. Arthur did not stand to gain by having the 1962 will declared invalid. He would have only taken one dollar under his father’s previous 1954 will. The only logical conclusion is that Arthur hoped that by delaying the distribution of his father’s estate that his step-mother’s interest in his father’s estate would lapse due to her death. Arthur should not benefit by his intentional efforts to delay the distribution of his father’s estate.
The Fourth District Court of Appeal noted that when the condition of a legacy was impossible of performance because of the volitional act of a third party who stood to gain by that act, performance was not required. See Wooster School Corp. v. Hammerer, 410 So.2d 524 (Fla. 4 th DCA 1982), citing to Estate of Mollard, 98 So.2d 814 (Fla. 1st DCA 1957). For example, in Sinnes v. Pereno, 629 So.2d 995 (Fla. 3d DCA 1993) the appellate court reversed a determination that a bequest lapsed due to failure of an expressed condition. Sinnes had been left $50,000 on the condition that he was employed by the testator’s mortgage company at the time of the testator’s death and that Sinnes furnished generally acceptable accounting services to the testator’s estate. Id. at 996. The co-personal representatives refused to appoint Sinnes as the estate accountant, “thereby precluding him from fulfilling one of the conditions of his bequest.” Id. at 997. Relying in part on Mollard and Wooster, the Third District Court of Appeal stated,
“The trial court abused its discretion in determining that the intent of the testator was that the bequest lapses. Sinnes’ position as a member of the testator’s family and as a close business associate make him a natural object of the testator’s bounty. Sinnes’ ability to perform the conditions of the bequest was made impossible by the acts of the co-personal *1095 representatives who stand to gain, because, as residuary legatees, they will take a part of any lapsed gift. “Where ... the impossibility arises not from some natural event beyond the control of anyone but from a volitional act or course of conduct on the part of someone other than the beneficiary, the courts have made a somewhat greater effort to discern what the testator would have done had he foreseen the problem.” Muffoletto v. Melick, 72 Md.App. 551, 531 A.2d 1285, 1289 (1987).
[[Image here]]
There is nothing in the record to suggest that the testator foresaw or reasonably could have foreseen that the co-personal representatives would preclude Sinnes from performing the conditions precedent to his bequest. We conclude that, if the testator had foreseen these circumstances, he would have desired that strict compliance be excused.” Id. at 997 — 998.
We conclude based on the evidence in the record, that if the decedent had foreseen that the prompt distribution of his estate would have been delayed by the will contest waged by Arthur, he would have desired that strict compliance regarding Ethel’s survival in order to receive her bequest be excused.
AFFIRMED.
THOMPSON, C.J., and GRIFFIN, J., concur.

. Ethel had filed a Motion to Dismiss Arthur’s petition, which the lower court granted in part with prejudice and denied in part, with leave to amend.

. Mary Ann Costa was appointed successor personal representative.

. The decedent’s prior will, dated September 2, 1954, left all of decedent’s estate to Ethel, and it provided for one dollar to Arthur and one dollar to decedent’s mother, sisters, and brother.

. The court sua sponte consolidated the two appeals.

. In his brief Arthur alleges that he was not motivated by money or greed but rather he challenged the will because he wanted "justice” and to punish whoever had committed the forgery.