Argued March 18, affirmed June 3, 1953

# JORGENSEN *v.* PIONEER TRUST CO. ET AL.

258 P. 2d 140

*Harry G. Hoy,* of Oceanlake, argued the cause for appellant. With him on the briefs was Hope Bassett, of Aloha.

*E. O. Statder, Jr.,* of Salem, argued the cause and filed a brief for respondents Conie Jorgensen, Iris Jorgensen Collins and Carl Collins.

WARNER, J.

This is a suit for a judgment construing the last will and testament of Minnie Jorgensen, who died testate in Marion county, Oregon, in March 1937, declaring the rights of the several parties claiming an interest thereunder and defining the duties of the defendant Pioneer Trust Company in its capacity as the testamentary trustee with respect to the trust assets. From a decree adverse to the plaintiff's claim, he appeals.

No evidence was adduced by any of the parties. The disclosure of facts is, therefore, limited to the matters admitted by the pleadings.

The testatrix was survived by three sons, hereinafter named, who were her only heirs. Harold E. Jorgensen died May 3, 1938, leaving as his sole heirs his two surviving brothers. Ira W. Jorgensen died August 30, 1938, and left surviving as his sole heirs his wife, the defendant Conie Jorgensen, and his daughter, the defendant Iris Jorgensen Collins. The defendant Carl Collins is the husband of Iris Collins. Claude W. Jorgensen, the only son now surviving, is the plaintiff and appellant.

Mrs. Jorgensen's will in form is not a model of excellence, as will be discovered from an examination of the provisions which claim our attention. They are:

"SECOND: I give and bequeath to my son, Harold E. Jorgensen, all household furniture and any personal effects in my home.

"THIRD: I devise to my son, Claude W. Jorgensen, the use, possession, occupancy, income, control and enjoyment for the term of his natural life my home located in the City of Salem, Marion County, State of Oregon, at 472 N. Liberty Street. It is one of the provisions of this Will that my son, Claude W. Jorgensen, will keep said premises in good repair, allow no encumbrances to be made against the same and pay all taxes, liens and assessments that may be placed against the same by the City, County or State.

"FOURTH: I give, devise and bequeath unto my said executor and trustee all real property and all personal property consisting of moneys, bonds, notes, and mixed property, of which I shall die possessed, wheresoever the same may be situated, to my trustee herein named and to its successor in trust, vesting it with the fee thereof to have and hold the same for the purposes and uses hereinafter provided.

"(a) I direct that my executor and trustee herein set aside $100.00 to be kept by it, and its successor, for the purpose of maintaining my burial lot from the interest thereof.

"(b) I direct my said trustee to pay the income from the principal of said trust estate to my sons, Claude W. Jorgensen, Harold E. Jorgensen, and Ira W. Jorgensen, share and share alike, giving each of my said sons one-third of my said income annually, or more often if it shall deem it advisable during their natural life.

"(c) I direct that neither the income from said trust estate, hereby provided for said beneficiaries, nor the principal sum shall be liable for their debts,

present or future, and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ or by any proceeding at law or in equity, and said beneficiaries shall not be given power to give, grant, sell, convey, mortgage, pledge, or otherwise dispose of, encumber or anticipate, the income or any installment thereof, or any share in the principal thereof, it being my will that no right of disposition of any such property shall vest in said beneficiaries until the same shall have been actually transferred or paid over to him or them.

"(d) I direct and authorize my said trustee to pay to Claude W. Jorgensen, Harold E. Jorgensen, and Ira W. Jorgensen, my sons, in its discretion in addition to the income from said estate, any portion or all of said principal in payments to my said sons as it may be deemed advisable for the support and maintenance of my said sons, in no event shall any one son, however, receive more than one-third of the moneys in the hands of my said trustee.

"(e) I direct my trustee to sell and dispose of my home located in the City of Salem, Marion County, State of Oregon, at 472 N. Liberty Street, or maintain the same as it may see fit, providing my said son, Claude W. Jorgensen, does not maintain my said home and pay all assessments, liens, and taxes which may be assessed against the same, or in the event my said son, Claude W. Jorgensen, desires to dispose of the same and receive the income derived from the moneys from the sale of said property during his natural life.

"* * * * *

"(g) I direct that this trust shall terminate upon the death of my said son, Claude W. Jorgensen, and that my trustee then shall pay over, transfer and deliver the entire principal constituting the trust, as the same shall then be, to my said sons, Harold E. Jorgensen and Ira W. Jorgensen, to have and to hold for their own use, benefit and behoof forever, share and share alike, per stirpes

and not per capita, providing, however, said trustee has not paid all of said principal and income to my said sons prior to the death of my said son, Claude W. Jorgensen, and providing further that if my said three sons shall not then be living, but shall leave living heirs of his body, the proportion of said property which would other wise have gone to such deceased child shall go to the then living heirs of the body of such deceased child by right of representation. It being strictly understood that if my said son, Claude W. Jorgensen, should leave a living heir or heirs of his body, then said estate shall be divided in three parts, one-third going to the heir or heirs of my son, Harold E. Jorgensen, or his heirs, and one-third to Ira W. Jorgensen, or his heirs. My said trustee is hereby instructed that when it divides my property after the death of my said son, Claude W. Jorgensen, that it will deduct any sum or sums which it has already paid to any one of my sons above the income from my said trust fund.

"(h) I direct that said trust shall cease as soon as practicable after the distribution has been made as outlined in my Will, except as to the $100.00 which is to be maintained by said trustee for the purpose of using the interest therefrom to maintain my burial lot.

"LASTLY, I hereby nominate and appoint Ladd and Bush Trust Company, a corporation, of Salem, Marion County, State of Oregon, incorporated under and by virtue of the laws of the State of Oregon, and authorized to handle estate, to be the sole executor of this, my Will, and the trustee of the trust herein created * * *."

The will's Fourth article is the only one with subparagraphs and, therefore, all references hereinafter made to subparagraphs necessarily refer to matter found in that article.

It is the contention of the plaintiff that by reason of the prior deaths of his brothers, Harold and Ira, it

is impossible for the trustee to carry out the terms of the will, particularly that part of subparagraph (g) which directs that the "trust shall terminate upon the death of my said son, Claude W. Jorgensen, and that my trustee then shall pay over, transfer and deliver the entire principal constituting the trust, as the same shall then be, to my said sons, Harold E. Jorgensen and Ira W. Jorgensen * * * share and share alike." Plaintiff argues that the death of his two brothers worked a failure of the provision referred to and that he is, by reason thereof, now entitled to receive the entire trust estate with all accumulations as the "sole survivor of the three persons made joint beneficial owners". This is predicated upon a claim of cross remainders. He also argues that the gift of income provided in subparagraph (b), for the benefit of Mrs. Jorgensen's three sons, is a gift to a class, thereby creating in her son Claude a survivorship interest in all the income derived from the trust.

Plaintiff seeks to fortify, and no doubt attempts to exemplify, his claimed present legal status in the premises by repeatedly representing that the property conveyed by his mother under the will made all distributions subject to his consent. This unique position is at one place extravagantly expressed in these words: "* * * the will was so drawn * * * that Claude Jorgensen had the right of saying 'This property may be sold and the entire estate divided among the heirs.' Thus they [the sons] became in legal effect joint tenants in the trust property and the income therefrom."

It takes no extended analysis of the will to demonstrate that the instrument vests Claude Jorgensen with no powers even remotely akin to what counsel with such sweeping generality ascribes to him. Under

the will Claude is given but one, and only one, power relating to the disposition of the estate left by his mother. That is found in subparagraph (e) which authorizes the trustee to sell the Liberty street residence "in the event my said son, Claude W. Jorgensen, desires to dispose of the same", upon which happening the avails of the sale are not then distributed but are held by the trustee with the income therefrom for the use and benefit of Claude.

The defendant trustee controverts the claims of plaintiff and asserts that the trust will not terminate upon the death of the plaintiff, Claude W. Jorgensen. As to the income provisions, the trustee asserts that because the will makes no provision for the disposition of Harold's and Ira's shares in the event of their death, the two thirds, theretofore available to them, must be retained by the trustee as additional corpus to be ultimately distributed as principal on the termination of the trust.

The answers of the defendants, Conie Jorgensen, Iris Jorgensen Collins and Carl Collins, her husband, present or raise no issue not presented or raised by the cross complaint of the defendant trustee.

The decree, after denying the relief prayed for by the plaintiff and holding that the title to the trust property, including the Liberty street residence, was vested in the defendant trustee, further provided:

"(2) That during the life of Plaintiff, Claude W. Jorgensen, he is entitled to receive one-third (1/3) of the net income from said trust corpus and the remainder of such income, exclusive of the income from 472 N. Liberty Street, Salem, Oregon, shall be added to the corpus and be ultimately distributed with such corpus as hereinafter provided.

"(3) That upon the death of plaintiff, Claude W. Jorgensen, without issue of his body surviving,

the entire trust estate then remaining that has not previously been disposed of in accordance with the terms of the Will of said Minnie Jorgensen shall be forthwith conveyed, transferred and delivered by trustee, free of trust, unto Iris Jorgensen Collins or to the issue of her body should said defendant not survive to take the said trust estate.''

There being no issues of fact, our problem is, therefore, limited to a determination of the intentions and purposes of the testatrix as they are discovered from an examination of the language of the testamentary instrument alone. Under the assignments of error argued here, we must give answer to the following questions: (1) Does the will by implication create estates of cross remainder? (2) Is the gift of income made to Mrs. Jorgensen's sons as a class?

We will first give consideration to plaintiff's claim that the will creates an estate of cross remainders to the benefit of testatrix' last surviving heir.

■ ''Where a particular estate is given to two or more persons in the same parcel of land as tenants in common, or particular estates in various parcels of the same land or in different lands are given to different persons in severalty, with a limitation that, upon the determination of the particular estate in any of the several parcels or undivided shares, they remain over to the other grantees, the remainders so limited over are called 'cross-remainders.' * * *'' 4 Thompson, Real Property perm ed, 762, § 2224; also see 2 Simes, Law of Future Interests, 258, § 435.

Resolving plaintiff's thesis of cross remainders in terms of the instant matter, it would follow, if true, that Mrs. Jorgensen conferred on each of her sons a life estate in her property with the incident reciprocal right of survivorship in each of them. When applied to

the known facts here, then upon Harold's death his share of the estate vested equally in his brothers, Ira and Claude; and upon Ira's death, Ira's interest vested in Claude, making the latter the owner of the entire fee.

■ There are many reasons for holding against this contention, but we pause here to note what, in our opinion, is a most persuasive one. The residuary estate, constituting the corpus of the trust and the income therefrom, is at all times vested in the trustee, to and until the death of Claude; and by the provisions of subparagraph (c), any vestment of title in the sons is expressly inhibited "until the same shall have been actually transferred or paid over to him or them." It applies with equal force to the income and principal.

There are only two provisions of the will authorizing the transfer of any part of the title to the corpus to the sons. The first provision for transfer is found in subparagraph (d). This empowers the trustee to invade the trust principal for the purpose of supplementing a given son's fund for his "support and maintenance" but not in excess of one third of the resources available. Under this clause it was possible that each of the testatrix' children might have received a full one-third share of the trust estate during his lifetime under the guise of necessity for his proper support and maintenance, thereby depleting the corpus and rendering nugatory the provisions of subparagraph (g). The provision for the occasional distributions under subparagraph (d) in and of itself tends to contradict any claim that Mrs. Jorgensen contemplated the creation of an estate of cross remainders in her sons.

The second provision contemplating a possible vestment of any part of the corpus in the sons of the testatrix is found in subparagraph (g). This we will discuss more fully later. It is sufficient here to say that

under it, Harold and Ira, if living, would have taken the shares there reserved to them as tenants in common in fee simple and that Claude would take absolutely nothing. Indeed, the will is clear that it was Mrs. Jorgensen's design that Claude would never take, through the trust, more than one third of the income, plus such principal amounts under subparagraph (d) as the trustee deemed advisable for his support and maintenance.

 Cross remainders may come into being by deed or by will. No precise form or technical words are necessary for their creation; but if created by deed, it must be done by express words, whereas in a will they may often be implied to effectuate the intention of the testator. 4 Thompson, Real Property perm ed, 762, § 2224; 2 Simes, Law of Future Interests, 258, § 435.

In 33 Am Jur, Life Estates, Remainders, etc., 540, § 83, we find:

> "* * * In order to constitute a cross remainder by necessary implication, there must appear in the will an intention that no person shall inherit any part of the estate or take it by way of remainder so long as any of the devisees or any of their issue, to whom it is given, are alive."

Also see 10 Eng Rul Cas 834.

The operation of the rule relating to the implication of cross remainder estates "requires an effective limitation of a future estate to take effect in possession at the end of the life of the survivor of the designated life tenants." 1 Restatement, Property, 361, § 115(d).

Applying the rule last stated, the following would have transpired under the will of Mrs. Jorgensen had Claude predeceased his brothers, Harold and Ira: The

trust would terminate and if Claude had died without issue surviving, then his living brothers would each be immediately vested with an undivided one-half interest as tenants in common in the fee; and in the further event that Claude died leaving issue surviving, then their respective moieties would be reduced to undivided thirds.

The provisions of subparagraph (g) in this respect clearly repel any suggestion of reciprocal cross remainders in either Harold or Ira which would or could vest in either of them as the survivor of the other. By the operation of subparagraph (g), the sons last referred to, during their lifetimes and prior to the death of their brother Claude, if he died before them, were endowed with a prospective title as owners of the entire fee, without the incidents of a life tenancy conditioned with a right of survivorship in the whole.

As a make-weight argument, it is pointed out that Claude's name is mentioned in the will more often than are the names of Ira and Harold; and that when the testatrix names all three sons together, Claude's name, "invariably leads all the rest," somewhat like Abou Ben Adhem's, though less obviously for the same sterling reasons. From this use of Claude's name by the testatrix in greater frequency and in preferred position, contextually speaking, we are invited to infer that Claude enjoyed a higher place in his mother's affection than did his brothers and was designedly to become the taker of the whole if his brothers predeceased him.

We are not so persuaded. To the contrary, in our opinion the will bespeaks a want of Mrs. Jorgensen's confidence in her son Claude's business ability and connotes her apprehensions lest he suffer from possible involvement with creditors or others. This is

made evident to us by making Claude's right to the possession and enjoyment of the Liberty street property contingent upon his keeping the same free from the lien of taxes and encumbrances and the power vested in the trustee to sell or maintain it if Claude failed to meet that condition. It is further emphasized by the spendthrift clause in subparagraph (c) and the continuity of the trust until Claude's death.

Plaintiff's second assignment of error presses us for a determination of the question of the proper disposition of the income which Harold and Ira had enjoyed prior to their demise. It is in this connection that we are brought to a consideration of whether the gift of income provided by suparagraph (b) is a class gift.

Aside from Claude's right to possess and use the Liberty street property and enjoy the income therefrom during his lifetime, as provided in the Third article of the will, and the right to the income from the proceeds of the sale of the Liberty street place, if sold by the trustee pursuant to subparagraph (e), the will, taken by its four corners, evidences testatrix' design and determination that *no son or his heirs, if any, should benefit by more than one third of the income or one third of the corpus,* unless Claude should die without heirs of the body surviving. This pattern is reflected by subparagraph (b) "giving each of my said sons one-third of * * * said income annually"; by the language of subparagraph (d) authorizing invasion of the principal for the support and maintenance of said sons but "in no event shall any one son * * * receive *more than one-third* of the moneys in the hands of my said trustee"; and by the provisions of subparagraph (g) directing that final distribution be made in three parts, with an evident

desire of maintaining an over-all equality in that ratio by requiring the trustee to surcharge such distributive shares with the amounts of principal, if any, which the trustee had previously disbursed to "any one of my sons" under the authority of subparagraph (d). (Italics ours.)

The manifest intention of Mrs. Jorgensen to maintain and make gifts of a balanced one third of her trust estate to each of her sons justifies the conclusion that it was her considered plan that at no time should either one of them receive under subparagraph (b) a greater amount than one third of the estate income therein referred to.

Plaintiff urges upon us the proposition that the donation of income here made is a gift to a class and that, by reason thereof, Claude, as the last surviving son of Mrs. Jorgensen, takes all the income therein reserved for distribution to his brothers now deceased.

■■ In 57 Am Jur, Wills, 830, § 1257, it is said: "The primary incidents of 'class gifts,' as the term is traditionally employed by the courts, are survivorship and the admission of after-born members. * * *"

In *Kaser v. Kaser*, 68 Or 153, 159, 137 P 187, we said:

"* * * A testamentary disposition of personal property to several colegatees, naming them, is not a gift to a class, and does not create survivorship, so that the share of a legatee dying before the time of distribution will go to those that live after such death, unless survivorship is distinctly expressed by the terms of the will, or is clearly implied therefrom: 40 Cyc. 1507."

Also see *In re Estate of McCoy*, 193 Or 1, 4, 236 P2d 311.

■ The universal rule for the determination of whether a given gift to several persons is to a class rather than to them as individuals is to ascertain the controlling intention of the testator. In aid of this, the law has long had recourse to various matters as indicia of such intention on the part of the testator. We will here, however, refer to only those few which are peculiarly pertinent to the language employed by Mrs. Jorgensen in creating her testamentary dispositions.

When, as in subparagraph (b) of the instant will, the gifts are made to beneficiaries designated by name, they take as individuals rather than as a class. 57 Am Jur, Wills, 833, § 1261; 69 CJ, Wills, 235, § 1264. If the gift made is accompanied by a mention of the amount or proportion which each beneficiary is to receive, or a description of his interest as a "share", it strengthens the construction, arising from a designation of the beneficiary's name, that the gift is a distributive rather than a class gift. 57 Am Jur, Wills, 836, § 1265; 69 CJ, Wills, 242, § 1265. Here the testatrix not only designates the beneficiaries by name but describes their respective proportions as "share and share alike, giving each of my said sons one-third of my said income annually".

Although in the gift of income which Mrs. Jorgensen has made to her three sons, "share and share alike", there is no language which expressly restricts the estate given to them to a life estate for each, yet there is not enough in subparagraph (b) to carry any larger estate; and if there were, we think that the subsequent words by which the direction is made, i.e., "giving each of my said sons one-third of * * * said income annually * * * during their natural life", would effectually cut down their respective

interests to life estates without reciprocal cross remainders in the interests of the others. *In re Laverick's Estate,* 18 Jur 304, 305.

■ We find no merit in appellant's contention that the gift of income to Mrs. Jorgensen's sons is a gift to a class.

The foregoing conclusions respecting the gift of income to the sons, standing alone, give no answer to the ultimate and proper disposition of Harold's and Ira's shares of that income accruing after their respective deaths and prior to the termination of the trust.

Under the terms of the will, all the sons received alike two beneficial gifts from their mother, i.e., a present donation of one third of the trust income (subparagraph [b]) and, as to Harold and Ira, a contingent one-half interest in the principal, if living at the time of Claude's death (subparagraph [g]); but neither constituted a vested interest in the subject matter (subparagraph [c]). However, the will makes no provision for the disposition of the interests of Harold or Ira in the event that they predeceased their brother Claude; and, as we have previously held, the will does not create an estate of cross remainders. The conclusion must, therefore, be that there is a partial failure of the trust as to the income provisions for the benefit of Harold and Ira, or, as said by some text writers and some opinions, a "lapsing" of these provisions under the circumstances outlined.

The usual situation wherein the term "lapse" is used "is that occasioned where a legatee or devisee dies before the testator, but the expression 'lapse' has frequently been employed with reference to other situations, such as * * * the death of a donee of

the income from a testamentary trust after the death of the testator and before the termination of the trust * * *." 57 Am Jur, Wills, 954, § 1424.

We recoil from the disposition of some courts and text writers to use the words "fail" and "lapse" as synonymous terms in the nomenclature of the law, when applied to situations reflected by the foregoing citation to 57 American Jurisprudence; and, therefore, we hereinafter apply the terms "fail" and "lapse" as referring to separate legal situations in the sense indicated by Professor Page in 4 Page, Wills, 163, § 1414, where he said:

> "If the beneficiary received a contingent gift, and died, after testator, but before the gift vests, such gift fails. While this is sometimes spoken of as lapse, this is not an accurate use of the term. If the beneficiary dies after the gift vests in interest, the gift does not lapse even though it has not yet taken effect in possession. A gift does not lapse because of the fact that the beneficiary dies after testator, but before the will is admitted to probate."

In so doing, we are maintaining the integrity and distinctive legal character of the term "lapse" as it was used in *Scott v. Ford,* 52 Or 288, 294, 97 P 99; *Shadden v. Hembree,* 17 Or 14, 24, 18 P 572; and more recently in *In re Estate of McCoy,* supra.

At the outset we are confronted with a presumption that Mrs. Jorgensen intended to dispose of her entire estate and did not die intestate either as to the whole or any part thereof. Where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of an estate will not be adopted if by any reasonable construction it can be avoided. This presumption gains

strength when the subject of the gift is the residuary estate. *In re Estate of McCoy,* supra, 193 Or 1 236 P2d 57 Am Jur, Wills, 754 et seq., §§ 1158, 1159; 69 CJ, Wills, 91, § 1147.

■ It has long been established that when a trust fails by the death of a donee or cestui que trust, a trust, to the extent of the estate given, will result to the donor, his heirs or legal representatives, if the donor, his heirs or representatives have not made provision for its disposition in the event of such failure. 1 Perry, Trusts and Trustee 7th ed, 254, § 160; Underhill, Law of Trusts and Trustees 10th ed, 172, art 27.

The Fourth article of the testatrix' will, taken as a whole, we read as her provision for the disposition of her residuary estate. The trust created thereby and the residuary clause are one and the same. The trust is made the medium for the administration of the life estates created thereby and for the distribution of the residuary estate in the manner and at the time indicated by that article. Under the Fourth article, until transfers of income or principal there directed are made to the beneficiaries designated, the trustee is vested with title thereto.

We think that Mrs. Jorgensen's last will and testament justifies the conclusion that she evidently supposed that she had disposed of her entire estate and did not die intestate as to any part thereof. Since she had vested her trustee with title to her residuary estate, any life estate created by the trust but failing during the term thereof for want of a specific provision for the further disposition of such interest upon the death of the life tenant, in this instance, the income reserved for Harold and Ira, remained in the trustee as an addition to the trust corpus, to be dis-

tributed as such to those found entitled thereto on the termination of the trust estate, that is, upon the death of Claude. *Union & New Haven Trust Co. v. Sellek,* 128 Conn 566, 24 A2d 485, 140 ALR 837, and annotations at p 864; 1 Scott, Trusts, 718, § 143.

We have carefully examined all the authorities that the appellant has marshaled in support of his several propositions but find therein nothing at variance with what we have said.

The decree is affirmed.