Submitted on record and briefs April 2, 1999, affirmed May 3, 2000

In the Matter of the Testamentary Trusts
Created Under the Last Will of Charles F. Berg.

TEMPLE BETH ISRAEL
and Robison Jewish Home,
fka Jewish Home for the Aged,
*Respondents,*

*v.*

Charles L. FEISS,
*Appellant.*

(9708-06587; CA A101787 (Control))

TEMPLE BETH ISRAEL
and Robison Jewish Home,
fka Jewish Home for the Aged,
*Respondents,*

*v.*

William J. HUTTON,
Personal Representative of the Estate of
Forrest T. Berg,
*Appellant.*

(9708-06587; CA A101954)
(Cases Consolidated)

2 P3d 388

Charles L. Feiss submitted the briefs *pro se*.

Helen Rives Pruitt, Robert D. Greaves and Meyer & Wyse LLP submitted the briefs for appellant William J. Hutton.

Carolyn W. Miller, Sally C. Landauer, Stephen J. Klarquist, Duffy, Kekel, Jones & Bernard, LLP and Ball Janik LLP submitted the brief for respondents Temple Beth Israel and Robison Jewish Home.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Armstrong, J., dissenting.

## KISTLER, J.

Charles Berg's will established a trust for the benefit of his son. The will provides that if his son dies without issue, the assets in his son's trust will become part of another trust that the will established for the benefit of Charles' wife and daughter. Charles' son died without issue. The wife and daughter's trust, however, terminated before the son died, and the trial court held that the assets in the son's trust reverted to Charles' estate. We affirm.

Charles Berg and his first wife[1] had a son Forrest. Charles and his second wife Saidee had a daughter Caroline. Charles died in 1932. In his will, Charles created two trusts, one for Forrest's benefit and the other for the benefit of Saidee and Caroline. He funded both trusts with the stock of a company he owned. Charles' will directs that, except for one share of stock, half of the stock in the company will be held in trust for Forrest and the other half will be held in trust for Saidee and Caroline.[2] Charles' will also provides that, with two exceptions, the proceeds of any insurance policy on his life will be paid into Saidee and Caroline's trust.

The will directs that the assets in Forrest's trust shall be distributed differently from the assets in Saidee and Caroline's trust. The will provides that Forrest will receive the dividends on the stock in his trust during his lifetime and that, if Forrest dies leaving issue, the trust will continue until the youngest of Forrest's issue reaches 21 years of age, at which time the trust assets will be distributed to Forrest's issue. The will also provides that:

> "[i]n the event of the death of my son FORREST BERG without leaving issue, the said stock shall be transferred to and become part of the 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST,' but the said 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST' fund shall be depleted to the extent necessary for the acquisition by said

---

[1] Charles' first wife apparently died before Charles wrote his will.

[2] Each trust held 648½ shares of common stock and 30 shares of preferred stock. Forrest and Saidee (and Caroline on Saidee's death) had the power to vote the stock in their respective trusts. Charles' will gave his attorney the power to vote the remaining share if Forrest and Saidee disagreed.

Trustee for the benefit of the widow of FORREST BERG, of an annuity [of $100 a month]."

As noted above, Charles' will directs that Saidee and Caroline's trust will be funded both with half of his company's stock and with the proceeds from certain insurance policies on his life. It directs that Saidee and Caroline will receive the income from the trust during their lifetime. It provides that if Saidee dies before Caroline, the trust will continue for Caroline's life and then for the benefit of Caroline's surviving issue until the youngest of her issue reaches 21 years of age, at which time the assets in the trust will be distributed to Caroline's issue. The will also provides for the disposition of the trust assets if Caroline dies without issue before Saidee. The will states:

> "If my said daughter shall die without leaving issue, and my wife shall be alive at such time, all of the trust fund shall be the property of my said wife, and at her death said trust shall terminate and the fund shall be divided among her legal distributees. Provided, however, that in each of the two instances in which I have directed division among legal distributees,[3] such provisions shall be deemed to be applicable only in the event the particular life tenant shall have died without leaving a Last Will and Testament directing the disposition of such fund, it being my intention to confer upon either of such life tenants to whom the clause may be applicable, a power of appointment to be exercised by Last Will and Testament. The provisions of this paragraph shall be applicable to the stock in the Corporation hereinbefore referred to and to dividends thereon, said stock having been heretofore specifically made a part of the 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST' fund."

After Charles' death, Caroline had no children and died before Saidee. Saidee died before Forrest and left a will in which she exercised the power of appointment that Charles' will gave her, although the parties disagree whether Saidee's will either could or did dispose of the contingent remainder in the stock in Forrest's trust. Finally, Forrest died without issue. On Forrest's death, the trustee of

---

[3] The two instances are (1) if Saidee dies before Caroline and Caroline has no issue and (2) if Caroline has no issue and dies before Saidee.

Forrest's trust petitioned the trial court for instructions on how the assets in Forrest's trust should be distributed.

Before the trial court, the parties offered three different views of what should happen to the stock in Forrest's trust. First, the personal representative of Forrest's estate argued that Charles' will gave Saidee's trust a contingent remainder in the stock in Forrest's trust, that the will gave Saidee a power of appointment over that contingent remainder, and that she transferred the remainder to Forrest in her will.[4] Second, the residuary beneficiaries of Saidee's will, Congregation Beth Israel and Robison Jewish Home, argued that the contingent remainder is conditioned on the requirement that Saidee and Caroline's trust be in existence at the time of Forrest's death. They also argued that Charles' will did not give Saidee a power of appointment over the contingent remainder and that, even if it did, Saidee did not exercise that power in her will. Finally, Saidee's heirs argued that Saidee's trust was in existence when Forrest died, that the stock in Forrest's trust became part of Saidee's trust, but that Saidee did not exercise her power of appointment over the contingent remainder. It follows, they concluded, that under Charles' will, the stock from Forrest's trust goes to Saidee's legal distributees.

The trial court ruled: (1) that Charles' will did not give Saidee a power of appointment over the contingent remainder in her and Caroline's trust; (2) that Saidee did not "purport to exercise the power of appointment over the contingent remainder interest"; and (3) that because Saidee and Caroline's trust terminated upon the distribution of its assets after Saidee's death, "the contingent remainder from the Forrest Berg Trust to the Saidee/Caroline Trust failed." The court accordingly concluded that when Forrest died, the "assets of the Forrest Berg Trust passed through a resulting trust back to the Estate of Charles F. Berg, where they passed under the residuary clause of Charles' will to the Estate of Saidee Berg, whose Will, through its residuary

---

[1] There is no dispute that Saidee's will gave Forrest the common stock that was in her and Caroline's trust. The issue is whether she also gave him the contingent remainder in the stock that was in his trust—a gift he could receive only after his death.

clause, controls disposition of the assets of the Forrest Berg Trust." It followed, the trial court found, that the assets in Forrest's trust should be distributed equally to the two residuary beneficiaries of Saidee's will, Congregation Beth Israel and Robison Jewish Home.

On appeal, all the parties agree that Charles' will gave Saidee and Caroline's trust a contingent remainder in the stock in Forrest's trust; the will provides that if Forrest dies without issue, the stock in his trust "shall be transferred to and become a part of" Saidee and Caroline's trust.[5] It is also not disputed that Saidee and Caroline's trust terminated before Forrest died; according to the terms of Charles' will, if Caroline dies before Saidee without leaving issue, Saidee and Caroline's trust terminates on Saidee's death. Although the parties phrase the issue in various ways, in our view, the source of their dispute reduces to the question whether the contingent remainder is also conditioned on a requirement of survivorship. Is there implicit in the contingent remainder a requirement that Saidee and Caroline's trust be in existence if and when Forrest dies without issue?[6]

■        On that question, Forrest's personal representative argues that the fact that the remainder is contingent does not necessarily mean that there is a condition of survivorship. He

---

[5] The future interests created are slightly more complex. The will creates an estate for life, a primary contingent remainder, and a secondary contingent remainder. It gives Forrest a beneficial interest in the stock for life; if Forrest dies leaving issue, then his issue will have a beneficial interest in the stock until the youngest reaches 21, at which point the stock would be distributed to them. If, however, Forrest dies without issue, then the stock becomes a part of Saidee and Caroline's trust. Therefore, Forrest's issue's future interest and Saidee and Caroline's trust's future interest are alternative contingent remainders. *See Webb v. Underhill*, 130 Or App 352, 357, 882 P2d 127 (1994).

[6] The parties debate whether the remainder interest is contingent on a person rather than an event and thus a "mere expectancy" that may not be transferred. *See Lee v. Albro*, 91 Or 211, 231, 178 P 784 (1919). Forrest's personal representative argues that the interest is contingent on an event (Forrest dying without issue) and not a person. Saidee's residuary beneficiaries respond that the interest is contingent on both an event (Forrest dying without issue) and a person (Saidee's and thus the trust's being in existence when Forrest dies). Whether Forrest's personal representative or Saidee's residuary beneficiaries are correct turns on whether there is a condition of survivorship; that is, each side's argument assumes that there is or is not a requirement of survivorship and proceeds from that assumption.

also notes that the will does not use express terms of survivorship. Saidee's residuary beneficiaries respond that not only had Saidee and Caroline's trust terminated by the time Forrest died but that its purpose—to provide support for Saidee and Caroline—had been accomplished. It follows, they conclude, that the provision in Charles' will directing that the stock in Forrest's trust be distributed to Saidee and Caroline's trust necessarily fails. Although both positions are theoretically possible, the latter fits more closely with the provisions in the will that create the contingent remainder, the inferences that can be drawn from the rest of Charles' will, and extrinsic evidence.

■ A future interest, by definition, involves a postponement of possession and enjoyment of property. Lewis M. Simes & Allen F. Smith, 2 *The Law of Future Interests* § 575, 8 (2d ed 1956). Usually, it is not important whether the future interest is classified as vested subject to complete defeasance or contingent subject to a condition precedent.[7] 1 *The Law of Future Interests* § 135. The relevant question is "whether the beneficiary's interest is completely lost if he fails to survive until the preceding interests are terminated and the time has come for him to possess and enjoy the property." 2 *The Law of Future Interests* § 575 at 8. The primary guide to answering that question is the language employed in the will, "read as an entirety and in the light of the circumstances of its formulation." *Restatement of Property* § 242 (1940); *compare Morse et al v. Paulson et al*, 182 Or 111, 115, 186 P2d 394 (1947) (son's interest in trust assets contingent on his surviving its termination) *with Williamson v. Denison and Groves*, 185 Or 249, 255, 202 P2d 477 (1949) (remainder interest vested where no basis for implying survivorship requirement in terms of will).

---

[7] "The question of whether a remainder must survive in order to take is often posed as 'was the remainder vested or contingent'?" William M. McGovern, Jr., Sheldon F. Kurtz, & Jan E. Rein, *Wills, Trusts and Estates: Including Taxation and Future Interests* § 11.1, 436 (1988). That shorthand formulation may obscure rather than advance the inquiry, however. A vested remainder subject to complete defeasance may be subject to a requirement of survivorship. 1 *The Law of Future Interests* § 135. Similarly, the fact that a remainder is contingent on one event does not necessarily mean that it is also subject to a requirement of survivorship. *Id.*

Charles' will does not contain an express requirement of survivorship. The question accordingly is whether one should be implied. Simes and Smith explain that "the cases in which the courts [have] impl[ied] a condition precedent of survivorship are those in which the language as to the time of distribution actually expressed in the will, if taken literally, cannot be carried out unless the legatee or devisee survived." 2 *The Law of Future Interests* § 576 at 11. The language as to the time of distribution in Charles' will meets that test. It provides that "in the event of the death of my son FORREST BERG without leaving issue, the said stock shall be transferred to and become a part of the 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST[.]' " The stock in Forrest's trust, however, cannot "be transferred to and become a part of" Saidee and Caroline's trust at the time of Forrest's death if, as happened here, Saidee and Caroline's trust terminated 27 years before Forrest died.[8] When Forrest died, there was no trust in existence to which the stock in his trust could be transferred. To paraphrase Simes and Smith, the language as to the time of distribution actually expressed in Charles' will, if taken literally, cannot be carried out unless Saidee and Caroline's trust existed at the time of Forrest's death, which it did not.

The next independent clause leads to the same conclusion. After providing that if Forrest dies without issue, the stock in his trust shall be transferred to and become part of Saidee and Caroline's trust, Charles' will adds: "but the said 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST' fund shall be depleted to the extent necessary" to purchase an annuity for Forrest's widow. Only if Saidee and Caroline's trust fund existed when Forrest died without issue, which it did not, would there be a fund that could be depleted to purchase an annuity for Forrest's widow. Although the will does not use express language of survivorship, that understanding is apparent from its terms.

---

[8] The will provides that, if Caroline has no children and dies before Saidee, their trust terminates on Saidee's death. Saidee died in 1970, 27 years before Forrest died.

Another portion of the will points in the same direction. Charles gave Saidee and Caroline a "power of appointment to be exercised by Last Will and Testament" over the assets in their trust. The paragraph giving Saidee or Caroline a power of appointment provides: "The provisions of this paragraph shall be applicable to the stock in the Corporation hereinbefore referred to and to dividends thereon, said stock having been heretofore specifically made a part of the 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST' fund." That sentence makes clear that Saidee and Caroline have a power of appointment over the stock that had been "specifically made" part of their trust, as well as the dividends on that stock. It implies that they have no power of appointment over the contingent remainder.

The Oregon Supreme Court had issued a decision in *Jerman v. Nelson*, 135 Or 126, 293 P 592 (1930), several months before Charles executed his will that "ma[de] it doubtful to what extent contingent remainders are alienable in Oregon." Leon F. Olmstead, Note, *Contingent Remainders*, 21 Or L Rev 81, 83 (1941).[9] In light of that uncertainty, we should be hesitant to assume that Charles intended to give Saidee or Caroline a power of appointment over the contingent remainder unless his will said so expressly. It does not.

■ We accordingly agree with the trial court that Charles did not give Saidee a power of appointment over the

---

[9] The *Jerman* court had reasoned:

"Under the common law, contingent remainders, of the class to which the one in the case at bar belongs, were not alienable to a stranger to the title. Some courts in sister jurisdictions adhere to that rule[.] * * * This court, however, is committed to the doctrine that such contingent remainders are vendible: *Love v. Walker*, 59 Or. 95 (115 P. 296); *Love v. Lindstedt*, 76 Or. 66 (147 P. 935 * * *)."

*Jerman*, 135 Or at 134 (some citations omitted). As the law review note points out, all contingent remainders were inalienable at common law. Olmstead, 21 Or L Rev at 83. To the extent the case suggests some classes but not others were inalienable, its reasoning is internally inconsistent. Moreover, *Jerman* cites *Love v. Lindstedt* for the proposition that even if a contingent remainder is not alienable, it is vendible—a proposition that has no bearing on Charles' will. Even if the court's decision several years after Charles death clarified, in *dictum*, the state of the law, *see Hawkins & Roberts v. Jerman*, 147 Or 657, 664-65, 35 P2d 248 (1934), that subsequent clarification is not relevant to what Charles reasonably would have understood when he executed his will.

contingent remainder to be exercised in her last will and testament. The reason seems apparent. Charles understood that Saidee's trust had to be in existence when Forrest died in order to receive the stock from his trust. If Saidee died before Forrest, her trust would have no interest in the contingent remainder over which she could exercise a power of appointment in her will since the right to receive the stock in Forrest's trust was conditioned on Saidee's trust (and Saidee's) surviving Forrest. Conversely, if Forrest died without issue while either Saidee or Caroline was living, then his stock would "be transferred to and become a part of" Saidee and Caroline's trust. They would have the power of appointment of that stock because, in that event, the stock in Forrest's trust would have been "specifically made a part of the 'SAIDEE R. BERG AND CAROLINE F. BERG TRUST' fund," as Charles' will contemplates.[10]

The reason for creating Saidee and Caroline's trust confirms what the terms of the will say. Saidee's residuary beneficiaries argue, and Forrest's personal representative does not dispute, that the purpose of Saidee and Caroline's trust was to provide for their care. Consistent with that purpose, Charles' will directed that if Forrest died without issue, the stock in his trust would become part of Saidee and Caroline's trust. Those assets would thus be available for Saidee, Caroline, or Caroline's surviving issue.[11] Once, however, Caroline died without issue and Saidee died, their trust terminated and the reason for transferring the stock in Forrest's trust to their trust ceased to exist. The failure of that purpose confirms what the plain language of the will implies: The contingent remainder was conditioned on a requirement of survivorship. *See Horton v. Board of Education*, 32 Wash

[10] As with the remainder of Charles' will, this conclusion is not unambiguous. However, when the language creating the contingent remainder is read in light of the language giving Saidee and Caroline a power of appointment over the trust assets, both paragraphs, read together, reinforce the conclusion that the contingent remainder was conditioned on the trust's being in existence when Forrest died.

[11] Charles' will does not provide that if Saidee and Caroline die without issue, the stock in their trust will be transferred to and become a part of Forrest's trust. Charles apparently concluded that Forrest would not need the assets in Saidee and Caroline's trust but that they might need the assets in his trust for their support.

2d 99, 201 P2d 163 (1948) (implying a requirement of survivorship where the entity that was the beneficiary of the gift had ceased to exist and the purpose of the gift had failed).

■■ We note finally that Saidee's will does not purport to exercise a power of appointment over the contingent remainder.[12] Rather, her will states that the trust her husband's will created "consists of shares of preferred and common stock of Charles F. Berg, Inc." She then exercises a power of appointment over the "entire assets" of the trust fund and once again specifies that those assets are the common and preferred stock that were then in her trust.[13] She does not say that those assets include the contingent remainder, nor does she purport to exercise a power of appointment over that remainder.[14] Saidee did not apparently understand that she had a power of appointment over the contingent remainder that she could exercise in her will; that is, she did not understand that the contingent remainder was an asset in her trust that would survive her death.

The dissent would reach a different conclusion. In its view, Charles' will does not impose a requirement of survivorship on the contingent remainder; rather, it gives Saidee a power of appointment over that remainder, and she in fact exercised it. The dissent does not press the last point too hard; it presumably recognizes that its position is flatly inconsistent with both the express language of Saidee's will

---

[12] Saidee and Charles were married when Charles drafted his will. To the extent there is any ambiguity in the terms of Charles' will, Saidee's understanding of Charles' will serves as some extrinsic evidence of his intent. *See Smith v. Brannan*, 152 Or App 505, 511, 954 P2d 1259 (1998) (extrinsic evidence may be considered if will is ambiguous).

[13] Forrest's personal representative argues that because Saidee used the phrase "entire assets" she must have intended to exercise a power of appointment over the contingent remainder. When, however, Saidee's will specifies what those assists consist of and omits any mention of the contingent remainder, the phrase "entire assets" will not support the interpretation Forrest's personal representative seeks to place on it.

[14] This reading of Saidee's will is consistent with a statement that her executor, who also drafted her will, filed with the Internal Revenue Service under penalty of perjury. He listed the contingent remainder as an asset of Saidee's trust but not an asset over which she had exercised her power of appointment. His statement presumably reflects the conclusion that the contingent remainder was conditioned on a requirement of survivorship; that is, if Saidee failed to survive Forrest, her trust had no right to receive the stock in his trust and the contingent remainder was not something over which she could exercise a power of appointment in her will.

and the statement made under penalty of perjury by the person who drafted her will, *see* n 14 above, if there were an ambiguity in her will that would justify resort to extrinsic evidence. Rather, the dissent focuses primarily on whether the contingent remainder is also subject to a requirement of survivorship: Does Saidee and Caroline's trust have to be in existence if and when Forrest dies without issue in order to receive the stock in Forrest's trust?

On that point, the dissent's reasoning rests principally on three propositions. The dissent begins from the proposition that "[a] contingent remainder has a present existence as certainly as does a vested interest." 167 Or App at 128. It follows, the dissent concludes, that the contingent remainder was an asset of Saidee and Caroline's trust from the day that trust came into existence. All contingent remainders have a present existence, however. *See* 1 *The Law of Future Interests* § 65 at 55.[15] To say that a contingent remainder has a present existence does not resolve whether it is also conditioned on a requirement of survivorship. The two concepts are not mutually exclusive.

The dissent reasons next that the language creating the contingent remainder—that if Forrest dies without issue, the stock in his trust "shall be transferred to and become a part of" Saidee and Caroline's trust fund—is simply intended to describe the recipient of the remainder. 167 Or App at 129. The language does that, but it also does more. It both identifies the recipient of the remainder and also imposes a condition that can only be satisfied if Saidee and Caroline's trust fund exists at the time of Forrest's death. That dual role is not unusual. A will that gave property to B for life and specified that on her death the property would "descend to the heirs of her body only" both identified the recipients of the remainder and implied through the use of the word "heirs" a requirement of survivorship. *Hawkins & Roberts v. Jerman*, 147 Or 657, 661, 35 P2d 248 (1934). The testator in *Hawkins & Roberts* could have used a different phrase, such as B's

---

[15] The two sections of Simes and Smith on which the dissent relies for the proposition that a contingent future interest has a present existence simply set out general propositions about all future interests. Neither section addresses, as later sections of that treatise do, whether the beneficiary's interest is lost if he or she fails to survive until the contingency is removed.

children, to describe the class of persons who would take the property on B's death, but those terms would not ordinarily imply a condition of survivorship. *See* 2 *The Law of Future Interests* § 579. The terms the testator used in that case, and in this one, matter. Although the dissent would recast and minimize what Charles' will says, "the language as to the time of distribution actually expressed in [Charles'] will, if taken literally, cannot be carried out unless the legatee or devisee survived." *See id.* § 576 at 11.

Finally, the dissent does not dispute that Charles' purpose in establishing Saidee and Caroline's trust was to provide for their care—a purpose that supports implying from the language a requirement of survivorship. The dissent reasons, however, that Charles had an additional purpose in mind. According to the dissent, Charles wanted to give Saidee the power to unify control of his company if Forrest died without issue. 167 Or App at 132. The purpose the dissent attributes to Charles seems remote. For that purpose to come to pass, Caroline would have to die without issue, Saidee would have to die before Forrest, and Forrest would have to die without issue. Charles, however, presumably hoped that both his daughter and his son would have children and die leaving issue. In that event, the stock would stay divided. If Forrest had issue, but Caroline had none, the stock would still be divided although Caroline could have exercised the power of appointment over the stock in *her* trust and given it to Forrest if she had no issue and outlived Saidee. And if Forrest died without issue *before* Saidee or Caroline died, Charles may well have wanted the stock in Forrest's trust to go to Saidee and Caroline's trust. That is precisely what the will says; that would unite control in the company; and it is consistent with a requirement of survivorship. But the will provides no basis for speculating about Charles' corporate purpose beyond that.

Having examined the text of Charles' will, we conclude that the right of Saidee and Caroline's trust to receive the stock in Forrest's trust was conditioned on, among other contingencies, a requirement of survivorship. Saidee and Caroline's trust had to be in existence if and when Forrest died without issue. Because their trust was not in existence

when Forrest died, the devise failed. As the trial court correctly held, the stock in Forrest's trust reverted to Charles' estate by means of a resulting trust, passed through Charles' residuary clause to Saidee's estate, and passed through Saidee's residuary clause to her residuary beneficiaries, Congregation Beth Israel and the Robison Jewish Home.[16] *See Oregon Bank v. Huss*, 99 Or App 449, 453, 782 P2d 451 (1989).

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority asks a question that this case does not present and then answers it incorrectly. In the process, it confuses the Oregon law of future interests in a way that, because of the rarity of cases on the subject, may take years to correct. Because I cannot join in creating that confusion, I dissent from the majority's decision.

In his will, Charles F. Berg gave the Saidee trust[1] a contingent remainder in the Forrest trust that was expressly contingent on Forrest dying without surviving issue. Nothing in Charles' will or in the nature of the remainder suggests that it was also implicitly contingent on the Saidee trust continuing in existence until Forrest died. Charles' will simply provided that, if Forrest died without leaving issue, "the said stock [in Charles F. Berg, Inc.] shall be transferred to and become a part of" the Saidee trust, subject to provision for

---

[16] Forrest's personal representative argues that Saidee's estate contracted with Forrest, pursuant to the terms of her will, to transfer the contingent remainder to him. He argues that, as a bona fide purchaser, his estate has an interest in the assets in his trust that supersedes the resulting trust that the trial court imposed on the assets. That argument assumes that Saidee purported to exercise her power of appointment over the contingent remainder in her will. As explained above, that assumption is not correct, and Forrest's personal representative's final argument fails.

[1] I will refer to each trust by the name of its principal beneficiary. By doing so, I emphasize that each trust existed separately and apart from its beneficiaries and was the legal owner in its own right of the property in the trust; it did not own property simply as an adjunct of the beneficiaries. In contrast, the majority refers to the trusts by a possessive (*e.g.*, "Forrest's trust"), thereby treating them as in some sense possessions of the beneficiaries rather than as independent entities. That nomenclature may reflect the majority's unwillingness to give the Saidee trust's ownership of a contingent remainder in the Forrest trust all of the characteristics that such ownership normally entails.

Forrest's widow. Yet the majority, without even explaining why it decided to undertake the quest, feels compelled to search out an additional contingency whose consequence is that the remainder fails and the trust's assets will be distributed in a way that neither Charles nor Saidee intended.

The majority reaches that result even though nothing in Charles' testamentary scheme requires (or even suggests the requirement) that the Saidee trust be in existence when Forrest died in order for the remainder in its favor to be effective. The majority's suggestion otherwise is the result of its failure to recognize the essential nature of every future interest: it represents an interest in the property that, although it will not result in possession until tomorrow, exists as much today as does the interest of the person who possesses the property today. A future interest is one stick out of the bundle of sticks that represents full ownership, and the owner of that stick owns a piece of the property today. With exceptions that I discuss below, under Oregon law that stick is as subject to being passed from one entity to another as is any other stick. Thus, although the remainder that the Saidee trust owned was contingent because the Saidee trust would not receive possession unless Forrest died without surviving issue, the Saidee trust still had a present interest in the Forrest trust. In his will, Charles described the nature and extent of that interest and designated the Saidee trust as the original owner.

These statements are hornbook law. A future interest "is an existing interest from the time of its creation, and is looked upon as a part of the total ownership of the land or other thing which is its subject matter"; the term is "applied only to indicate that the possession or enjoyment of the subject matter is to take place in the future." Lewis M. Simes and Allan F. Smith, 1 *The Law of Future Interests* § 1, 3 (2d ed 1956). A contingent remainder has a present existence as certainly as does a vested interest. *Id.* § 65 at 55. The contingent remainder in the Forrest trust, thus, was one of the assets of the Saidee trust from the moment that the Saidee trust came into existence.[2]

---

[2] *Oregon Bank v. Huss*, 99 Or App 449, 782 P2d 451 (1989), on which respondent relies, involved a contingent remainder given to a trust that would have been

Nothing in what Charles said in his will makes this remainder explicitly contingent on the continued existence of its original owner, and I find nothing that does so implicitly. The majority seems to base its contrary conclusion in large part on the words that Charles used in creating the remainder. He stated that, if Forrest died without surviving issue, the stock shall be "transferred to and become a part of" the Saidee trust at that time. The majority apparently treats that statement as a requirement that the Saidee trust exist rather than as a description of who is the original owner of the remainder. If it were correct, few remainders could survive the original owner, because remainders normally provide for transferring possession to the remainderperson. Yet it is clear that the original owner of a remainder may convey it to another, who will take possession without regard to whether the original owner is alive at the time. *See, e.g., Restatement of Property* § 162, illustration 1 (1936).[3] There is thus no reason to read words that designate the original owner of the remainder, but that do not expressly require survivorship, as impliedly creating such a condition. Implying a condition of survivorship could make sense only if a remainder were inalienable, so that no one other than the original owner could ever own it. However, the remainder in this case was clearly alienable when Charles wrote his will and continues to be alienable today. There is, thus, no implied condition of survivorship.

---

created under a will that the trustor subsequently revoked. Thus, the trust did not exist when the remainder was created and could never have come into existence. Because there was no entity that could become the owner of the remainder at its creation, the remainder failed *ab initio*. That has little if anything to do with this case.

[3] In the illustration, the remainder is to "B's children and their heirs," which is construed to mean B's children, whether or not they survive B. According to the illustration, C, a child, may convey the remainder and the recipient will be entitled to possession when the remainder takes effect, even if C dies before B. It is hard to see how this typical example is consistent with the majority's explanation of the literalness criterion. *See* 167 Or App at 121. There is no principled distinction between "remainder to A" and "the property shall be transferred to A"; they both give A a right to the property. It is clear in the first case that the remainder is effective as to A even if A is no longer alive. Because the remainder is effective in that case, it is also effective in the second case. In contrast, the majority would create a condition of survivorship in every case where the grant does not expressly exclude it.

This remainder is contingent because it is uncertain whether an event—Forrest's death without surviving issue—will occur. There is no contingency concerning what person will have the right to possession if the event occurs. When Charles executed his will, as today, Oregon law clearly provided that a remainder that was contingent on an event was alienable. *Love v. Lindstedt*, 76 Or 66, 147 P 935 (1915). The remainder interests in *Love* were "contingent as to their occurrence, but vested as to the persons who should enjoy them[.]" *Id.* at 74. As a result, the court held in *Love*, those who held the contingent remainders could convey them to the life tenant, with the result that the life tenant could then convey the fee title to a third party. Shortly after Charles executed his will, the Supreme Court nailed that point down in *Hawkins & Roberts v. Jerman*, 147 Or 657, 35 P2d 248 (1934). Quoting a treatise, it indicated that the reason for the distinction is that, when the contingency involves the existence of a person, there is no one who has the capacity to convey it. That is not the case when the contingency involves an event and the person who will take possession if the contingency occurs is certain. 147 Or at 664-65.

The legal effect of Charles' will, both under the law as it existed at the time of his will and under the law today, is that the Saidee trust owned a present contingent interest in the Forrest trust that carried with it the power of alienation. Although Charles may have restricted the trust's authority to alienate the remainder, that restriction does not affect the legal character of the remainder.

This discussion tells us all that we need to know about this contingent remainder in order to decide the issues before us. We know that the remainder was a separate property right that represented a present interest in the Forrest trust, that the Saidee trust was the original owner of the remainder, and that the trust had the legal capacity to alienate it in accordance with any restrictions that Charles placed on doing so. The remainder, that is, was like any other piece of property that the trust owned. Nothing about the trust or Charles' will suggests that it had any other contingencies or restrictions. The only remaining issue is to determine who succeeded to the remainder when the Saidee trust terminated and distributed its assets.

Instead of deciding that issue, the majority asks whether there is an additional, unexpressed contingency to the remainder: that the Saidee trust be in existence when Forrest died without surviving issue. The cases that the majority cites do not require it to ask that question, because they do not involve remainders with similar terms. In one case the issue did not involve the terms of a remainder in a trust but, rather, whether the property at issue ever entered the trust at all. The court held that the property was part of the trust and, thus, the remainder expressly required the original owner of the remainder to survive until the trust terminated. Because he did not, the interest in the trust passed to the original owner's children, in accordance with the terms of the trust, rather than to his children and his wife, in accordance with his will. *Morse et al v. Paulson et al*, 182 Or 111, 186 P2d 394 (1947). In another case, the issue was whether the original owner's interest was vested; because it was, her husband succeeded to it. *Williamson v. Denison and Groves*, 185 Or 249, 202 P2d 477 (1949). Those cases involved no more than construing the express terms of the wills involved. To the extent that those words raised issues of whether the interest was contingent on survivorship, the court had to consider that issue. Here, in contrast, the words of Charles' will do not raise such issues.

The majority fails to recognize that the provision that, if Forrest died without issue, the stock in the Forrest trust "shall be transferred to and become a part of" the Saidee trust simply creates the remainder and describes who owns it. It is the same as if Charles had provided that, if Forrest died without surviving issue, the stock in the Forrest trust would become the property of A. In that case, A would have a contingent remainder that was contingent as to an event, not a person. If A died before Forrest, the remainder would pass through A's will or by intestacy. If A conveyed the remainder to some one else *inter vivos*, that person would own it without regard to whether A survived Forrest. What Charles actually did had exactly the same effect, except that he gave the remainder to a trust rather than a person. When the trust dissolved, it was the same as if A died; the remainder did not disappear but went somewhere else.

Even if there were some reason that we had to decide whether Charles intended the remainder to be contingent on the existence of the Saidee trust, the majority's answer to that question is wrong. The majority bases its conclusion primarily on its belief that Charles' sole purpose in establishing the trust and giving it the remainder was to provide for Saidee and Caroline; thus, after they both died and the trust was dissolved, the remainder served no further function. Charles, however, had at least one other obvious purpose that he could achieve only if the remainder survived the dissolution of the Saidee trust. He was clearly concerned about the continuing prosperity and control of the corporation. In his will, he emphasized his trust in Forrest's business sense but also recognized that Forrest was only 31 years old at the time. He knew that dividing the corporate stock equally between the Forrest and Saidee trusts, as he did, could result in a stalemate, so he gave one share to his lawyer, allowing the lawyer to break any deadlocks. He certainly intended to use the corporate stock to benefit Saidee, Caroline, Forrest, Forrest's issue, and Caroline's issue. In doing so, he had to divide the stock among them. Nevertheless, he also made it possible to restore unified control of the company if one or the other had no issue. If Forrest died without issue, the contingent remainder to the Saidee trust would achieve that purpose. If Caroline died without issue, either she or Saidee could appoint the stock in the Saidee trust to Forrest, again achieving that purpose. That, of course, is exactly what Saidee did.

If the majority is correct, the unified control that Charles so carefully permitted if Saidee died before Forrest and Forrest had no surviving issue could not last beyond Forrest's death. Instead, the stock had to be divided and, with it, the corporation. Under the majority's view, Saidee could not give Forrest control over the shares in the Forrest trust, even though the Saidee trust, over which she had a power of appointment, owned the operative remainder in those shares. The only way that she could preserve unified control, according to the majority, would have been the indirect route of making Forrest her residuary beneficiary, something that would have interfered with her overall estate plan. Excluding the contingent remainder from Saidee's or

Caroline's power of appointment would undercut an important part of Charles' overall estate plan and would unnecessarily threaten the survival of the business that was his life's work. On the other hand, a condition of survivorship is entirely unnecessary to achieve Charles' purpose of providing for Saidee and Caroline. The majority is wrong.

I turn to what happened to the remainder on the dissolution of the Saidee trust. In his will, Charles provided that, on Caroline's death without issue, *"all of the trust fund* shall be the property of" Saidee and that at her death "the fund" was to be divided among her legal distributees unless she exercised her testamentary power of appointment "directing the disposition of such fund[.]" Those provisions show that Charles gave Saidee a power of appointment over every asset in the Saidee trust. The additional statement in Charles' will that the provisions of the paragraph involved "shall be applicable to the stock in the Corporation * * *, said stock having been heretofore specifically made a part of" the Saidee trust fund simply describes *part* of the trust corpus over which Saidee had a power of appointment. It does not limit the otherwise broad statement of her power. Because the remainder was one of the assets of the trust, Saidee had a testamentary power of appointment over it.

The more difficult question is whether Saidee effectively appointed the remainder to Forrest. In exercising the power of appointment in her will, Saidee described the assets of the Saidee trust as "shares of preferred and common stock" of the company, an apparently more limited description than Charles had used. She then purported to appoint the "entire assets" of the trust by giving the preferred stock "which is held in the aforementioned" trust to two employees and the common stock "which is held in the aforementioned" trust to Forrest, if he survived her and if he accepted the conditions that she established, as he did. She did not expressly refer to any contingent interest that the Saidee trust may have held in the Forrest trust. However, that remainder was an existing interest in precisely the kinds of stock that she expressly described.

There may be some ambiguity in Saidee's will about whether she was appointing the contingent remainder as

well as the stock that the trust actually possessed. Her express appointment of the shares may point in one direction, but her references to the "all of the trust fund" and the "entire assets" of the trust point in the other. What *is* clear, however, is that she intended to exercise her power to its fullest extent. That action was also consistent with Charles' apparent purpose in the situation that actually developed. Although the issue may be somewhat close, I would hold that Saidee effectively appointed the remainder to Forrest.

We generally presume that a testator did not intend to die intestate as to any part of the estate. Thus, where it is possible to construe a will in more than one way, we will adopt the construction that avoids having anything pass by intestacy. *See Erickson v. Palmer et al,* 211 Or 342, 353, 315 P2d 164 (1957); *Jorgensen v. Pioneer Trust Co. et al.,* 198 Or 579, 595-96, 258 P2d 140 (1953). Although that rule does not directly apply to this case, it is useful by analogy. Saidee's will shows that she intended to exercise her power of appointment to its maximum extent. If she failed to do so effectively, the contingent remainder passed through the trust's default provision to her legal distributees, that is, her intestate heirs. *See Black's Law Dictionary,* 1039 (rev 4th ed 1968).[4] Because it is possible to read Saidee's exercise of the power of appointment as including all of the assets of the trust, including the contingent remainder, and because that reading is the most consistent with her intention, I would adopt it.

Saidee, thus, had a testamentary power of appointment over the contingent remainder, she exercised that power in her will, and Forrest thereby became the owner of the remainder as to the common stock. When he died without issue, that remainder vested in his estate, which is therefore entitled to receive the common stock, while the remainder as to the preferred stock vested in the two employees. Because the majority holds otherwise, I dissent.

---

[1] Most of those heirs have appeared in this case to assert their rights to the stock.